479 So.2d 236 (1985)
Sarah MERLIN and Joseph Merlin, Her Husband, Petitioners,
v.
BOCA RATON COMMUNITY HOSPITAL, INC., Dr. Burton S. Wollowick, and Dr. Orrin Stern, Respondents.
No. 85-1545.
District Court of Appeal of Florida, Fourth District.
December 4, 1985.
*237 Gary W. Roberts of Ricci & Roberts, P.A., West Palm Beach, for petitioners.
Marjorie Gadarian Graham of Jones & Foster, P.A., West Palm Beach, for respondent-Boca Raton Community Hosp., Inc.
Nancy P. Maxwell of Metzger & Sonneborn, West Palm Beach, for respondent-Dr. Orrin Stern.
PER CURIAM.
Plaintiffs Sarah and Joseph Merlin petition for review by certiorari of a discovery order in a medical malpractice suit. We grant the petition and quash the order.
On March 5, 1984, plaintiffs/petitioners filed a complaint, sounding in medical malpractice against Boca Raton Community Hospital, Inc., Dr. Burton S. Wollowick and Dr. Orrin Stern. On December 3, 1984, the defendants deposed both plaintiffs. While Mrs. Merlin was being deposed, Mr. Merlin was in the room, reviewing his own handwritten notes, which had been in his counsel's file. When Mr. Merlin was deposed, defense counsel asked him what he had been reading while his wife was being deposed. Merlin said they were his handwritten notes, written when the Merlins knew they were going to get a lawyer. In response to defense counsel's questions, Mr. Merlin maintained the notes did not refresh his memory, as he remembered everything that was in the notes before looking at the notes.
When plaintiffs refused to produce these notes for defendants, defendants moved to compel their production, and after hearing and in camera inspection of the notes the trial court granted the motion, stating that defendant, Dr. Stern, could not retain a copy of the handwritten notes, but could inspect the notes prior to redeposing Mr. Merlin, and could use the notes for the purpose of questioning Mr. Merlin. A copy of the notes is included in petitioners' appendix. The notes are a chronological summary, as Mr. Merlin remembered and perceived them, of the medical events involved in the law suit. By their content the notes would have to have been written on or after July 5, 1984, unless they were not all written at one time.
Plaintiffs/appellants timely petitioned for review by certiorari. The issue is whether the trial court departed from the essential requirements of law when it ordered petitioners to produce handwritten notes prepared by the husband/plaintiff in a medical malpractice suit and reviewed by him during the deposing of the wife/patient/plaintiff just preceding his own deposing. We conclude that it did.
*238 According to Mr. Merlin's deposition, he wrote the subject notes one morning in 1984 at 6:00 a.m. when he knew he and his wife were going to get an attorney. He did not write them at the request of an attorney, but on his own. Petitioners argue the notes are privileged either under the attorney-client privilege or as work product. Respondents argue they are neither, and therefore are subject to production; but, if they are work product, they would be producible because the work product privilege is limited.
On several occasions this court has urged that in deciding to require discovery of statements, the trial court should reveal its reasons and make a finding as to the purpose for which the statements were made. Scotchel Enterprises, Inc. v. Velez, 455 So.2d 1129 (Fla. 4th DCA 1984); Selected Risks Insurance Company v. White, 447 So.2d 455 (Fla. 4th DCA 1984); Cotton States Mutual Insurance Company v. Turtle Reef Associates, Inc., 444 So.2d 595 (Fla. 4th DCA 1984). The aims, of course, are (a) to obtain justice by (1) surgical focus by the trial court on the individual case, and (2) treatment of like cases alike and different cases differently; and (b) to avoid ad hoc justice, which is not justice at all. While those cases related specifically to whether statements obtained by insurance adjusters or investigators qualified as work product, this court's urging should apply whenever the material in question may be work product.
Here, the trial court found that Mr. Merlin used his notes to refresh his recollection prior to being deposed. This finding appears by implication to be the basis on which the court ordered the notes to be made available to defendant Stern just prior to redeposition of plaintiff Mr. Merlin, so that the notes may be used for the purpose of questioning Mr. Merlin. One might infer, therefore, that the trial court was applying section 90.613, Florida Statutes (1983). That section of our evidence code states:
90.613. Refreshing the memory of a witness
When a witness uses a writing or other item to refresh his memory while testifying, an adverse party is entitled to have such writing or other item produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce it, or, in the case of a writing, to introduce those portions which relate to the testimony of the witness, in evidence. If it is claimed that the writing contains matters not related to the subject matter of the testimony, the judge shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objection shall be preserved and made available to the appellate court in the event of an appeal. If a writing or other item is not produced or delivered pursuant to order under this section, the testimony of the witness concerning those matters shall be stricken. [Emphasis added.]
In the present context, the critical phrase in the above statutory section is "while testifying." The question then becomes what constitutes use of a writing to refresh one's memory while testifying? In the present case, must the writing or other item be used during the actual deposing of the party, or is it enough petitioner used it while waiting to be deposed, and the trial court subsequently determined that he was refreshing his memory thereby? Respondents argue the latter, of course, basing their contention on the observation in the Scotchel opinion that there was no record evidence the witness had referred to the subject statement either before or during the taking of his deposition, in order to refresh his memory. We believe they read more into the observation than may safely be seen there.
Petitioners rely on the maxim that plain language of a statute needs no construction, maintaining that the statutory phrase "while testifying" is plain language. There is merit in this position.
Pertinent Florida case law is skimpy, and virtually all of the cases are criminal rather than civil. In Soler v. Kukula, *239 297 So.2d 600 (Fla. 3d DCA 1974), the trial court was found to have erred when it prohibited defense counsel from inspecting personal notes and records of a police officer who consulted those papers while testifying for the plaintiff. In that opinion the appellate court asserted that in both criminal and civil cases the opposing party has a right to see and examine such documents in order to be able properly to cross-examine the witness. However, the key fact in Soler v. Kukula is that the witness testified from the notes and records. In Kimbrough v. State, 219 So.2d 122 (Fla. 1st DCA 1969), the trial court refused to permit the defendant to inspect a written report made by a police officer who testified for the prosecution. It was clear from the record the witness did not use the report to refresh his memory while testifying. The appellate court affirmed, saying:
Although we have been unable to find a Florida case relating to precise facts here involved and none has been called to our attention by either party to this appeal, we believe that the majority view as expressed in the annotation at 82 A.L.R.2d 473 at page 562, which is set out hereafter, is sound and well reasoned and in our view is controlling in the instant case on this issue:
"Notwithstanding authority to the contrary, it has been held in many recent decisions that where a witness has refreshed his present recollection prior to the time of giving testimony, by the use of papers or memoranda out of court, he is not, unless the court in its discretion orders otherwise, obliged to produce them to allow the opposing party to make an inspection."
Id. at 124. From this we conclude that notes used to refresh a witness' or a party's memory other than while actually being deposed or testifying may or may not be disclosed to the adverse party, according to the trial court's discretion. Such notes are not discoverable, however, if they are otherwise privileged.
Accordingly, we next consider whether the petitioner/husband's notes in the instant case are otherwise privileged. Generally speaking, for the attorney-client privilege to come into play, making communications between them privileged, there must be an attorney-client relation, or the person must have made the communications to the attorney with a view toward employing the attorney professionally. Keir v. State, 152 Fla. 389, 11 So.2d 886 (1943). Here, petitioner told the trial court that he prepared his notes when plaintiffs knew they were going to get an attorney; and internal evidence suggests they were prepared after litigation had begun. We cannot consider counsel's affidavit  found in the appendix, but not before the trial court  respecting the confidential state of the notes in counsel's file until given back to petitioner at the time of the deposition, but such appears to have been the situation, and there is no contrary evidence. We conclude the notes were protected by the attorney-client privilege, as they were prepared for and transmitted to the attorney either in contemplation of or during the litigation and kept confidential throughout. We recall that the court said in United States v. United Shoe Machinery Corporation, 89 F. Supp. 357, 358 (D.C.Mass. 1950):
The rule which allows a client to prevent the disclosure of information which he gave to his attorney for the purpose of securing legal assistance is founded upon the belief that it is necessary "in the interest and administration of justice". Hunt v. Blackburn, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488. As stated in the Comment to Rule 210 of the A.L.I. Model Code of Evidence: "In a society as complicated in structure as ours and governed by laws as complex and detailed as those imposed upon us, expert legal advice is essential. To the furnishing of such advice the fullest freedom and honesty of communication of pertinent facts is a prerequisite. To induce clients to make such communications, the privilege to prevent their later disclosure is said by courts and commentators to be a necessity. The social good derived from the proper performance of *240 the functions of lawyers acting for their clients is believed to outweigh the harm that may come from the suppression of the evidence in specific cases." [Emphasis added.] But the privilege should be strictly construed in accordance with its object. People's Bank v. Brown, 3 Cir., 112 F. 652.
We grant the writ and quash the discovery order.
GLICKSTEIN and DELL, JJ., concur.
LETTS, J., concurs in conclusion only.