629 So.2d 852 (1993)
KRYPTON BROADCASTING OF JACKSONVILLE, INC., a Delaware corporation, Petitioner,
v.
MGM-PATHE COMMUNICATIONS CO., a Delaware corporation, Bono Equity Corporation, a Florida corporation, Respondents.
No. 92-03375.
District Court of Appeal of Florida, First District.
April 28, 1993.
Rehearing Denied February 4, 1994.
J. Patrick Knight and Freeman W. Barner, Jr., of Cromwell, Pfaffenberger, Dahlmeier, Barner & Griffin, North Palm Beach, for petitioner.
Simon W. Selber of Selber & Selber, P.A., Jacksonville, for respondent MGM-Pathe Communications Co.
BOOTH, Judge.
This cause is before us on petition for writ of certiorari under Florida Rule of Appellate Procedure 9.030(b)(2)(A) from an order overruling objections to interrogatories and requests *853 for production, and compelling answers.
Plaintiff/respondent MGM-Pathe Communications Company (MGM) filed suit against Bono Equity Corporation (Bono) and Krypton Broadcasting Corporation (Krypton) for breach of contracts under which MGM was to provide certain movies and television shows to Bono or Krypton, the successive operators of a Jacksonville television station, and Bono or Krypton were to make a series of payments to MGM. In Counts I through V of its amended complaint, MGM alleged that between May 1985 and September 1988, it had entered into certain contracts with Bono, then the operator of the television station. Bono assigned its rights and obligations under these contracts to Krypton, petitioner herein, in July 1990. Krypton thereafter failed to make the payments required under the contracts. In Count VI, MGM alleged that it had entered into a similar contract with Krypton in October 1990, and that Krypton had thereafter failed to make the payments required under this contract. In Counts VII and VIII, MGM sought quantum meruit recovery from Bono and Krypton.
On June 16, 1992, MGM served on Bono and Krypton interrogatories and requests for production. We decline to burden this opinion with the full text of these discovery requests and instead present the following as examples to be further discussed herein:
INTERROGATORY 1
State the full names of the person answering these interrogatories on behalf of defendant KRYPTON and of C.E. Feltner, Jr., C.F. Bent, III, Don Fergeson, and the president, vice presidents, corporation head, chief corporate officer, chief operating officer, chief financial officer, cashier, treasurer, secretary, general managers, directors, officers, stockholders, registered agents, and business agents of defendant KRYPTON and of defendant Bono Equity Corporation, hereinafter referred to as defendant "BONO," from January 1, 1986, to the present and any other names by which any of the foregoing persons are or have ever been known; such persons' present residence addresses; any other addresses at which such persons have resided during the past ten years; such persons' present residence telephone numbers; the names of such persons' present businesses or employers; such persons' present business addresses; such persons' present business telephone numbers; such persons' social security numbers; the dates and places of such persons' births; and the positions, job titles, and inclusive dates of employment at such positions and job titles of such persons during their present and past employments by defendant KRYPTON and defendant BONO.
... .
INTERROGATORY 6
State the names, residence addresses, residence telephone numbers, business addresses, business telephone numbers, social security numbers, and any other information useful or necessary for the location of all persons who are believed or known by defendant KRYPTON, its employees, its agents, its attorneys, or the person answering these interrogatories on its behalf to have any knowledge concerning the subject matter of this action; the issues raised by the pleadings; the receipt, retention, use, destruction, delivery, or return of any original, copy, or photocopy of any film, print, tape, or other product which is the subject matter of those certain agreements, copies of which are attached as Exhibits A through F of the complaint herein; or any of the documents described in the First Request by Plaintiff for the Production of Documents and Tangible Things by Defendant Krypton served herewith; and specify the subject matters, issues, films, prints, tapes, products, or documents concerning which each such person knowledge.
... .
INTERROGATORY 13
What are the material terms of all oral and written agreements between plaintiff MGM or its predecessors in interest and defendant KRYPTON, between plaintiff MGM or its predecessors in interest and defendant BONO, and between defendant KRYPTON and defendant BONO, including, without limitation, all agreements whereby defendant KRYPTON acquired *854 rights and assumed and agreed to perform obligations under those certain agreements, copies of which are attached as Exhibits A through E to the Complaint herein; what documents evidence, concern, or refer to any of such agreements; and who has possession, custody, or control of the original or any copy or photocopy of any such document?
... .
REQUESTS FOR PRODUCTION
... .
2. All documents evidencing, concerning, or referring to the election, designation, or appointment of presidents, vice presidents, corporation heads, chief corporate officers, chief operating officers, chief financial officers, cashiers, treasurers, secretaries, general managers, directors, officers, stockholders, registered agents, and business agents of defendant BONO and defendant KRYPTON from January 1, 1985, to the present, including, without limitation, all documents evidencing, concerning, or referring to minutes of meetings of stockholders and boards of directors.
... .
7. All documents evidencing, concerning, or referring to any oral or written communication between defendant BONO, defendant KRYPTON, or any of said defendants' past or present employees or agents and any other person or entity concerning the subject matter of this lawsuit or the matters alleged in the pleadings herein, including, without limitation, those certain agreements, copies of which are attached as Exhibits A through F to the Complaint herein.
Krypton objected, contending inter alia that the requests were burdensome, calculated for harassment, "could not possibly serve any useful purpose," sought personal, confidential, and privileged information, that the requests were vague and unintelligible, and that the requests sought matters within the work product or attorney-client privileges.
The trial court, on September 17, 1992, entered an order limiting the scope of Interrogatory 1 from "during the past ten years" to "from January 1, 1986 to the present," making minor changes to two of the other interrogatories, and deleting a duplicative interrogatory. The order otherwise compelled Krypton to answer the interrogatories in their entirety and to make production of all of the documents and tangible items sought, at the offices of MGM's counsel. It is from this order that Krypton seeks certiorari review.
Krypton, on October 7, 1992, filed an answer, affirmative defenses, and counterclaims. In its answer, Krypton admitted that Bono had entered into the contracts and admitted taking assignment of the contracts. Krypton also admitted entering into the October 1990 contract. Krypton denied having assumed the obligations under the contracts in the manner alleged in the amended complaint and denied liability under quantum meruit. As affirmative defenses, Krypton alleged that it was established custom and practice in the television industry for payments under license agreements to be restructured and extended at the request of the licensee based upon economic circumstances. Krypton also asserted unconscionability and estoppel. In its counterclaims, Krypton sought, inter alia, declaratory judgment, damages to its business and reputation, and specific performance. Thus, the answer, affirmative defenses, and counterclaims brought numerous additional issues into litigation.
At the outset, we reject Krypton's argument that the court must limit its consideration to the issues raised in the amended complaint in determining the propriety of MGM's discovery requests. It is axiomatic that information sought in discovery must relate to the issues involved in the litigation, as framed in all pleadings. Becker Metals Corporation v. West Florida Scrap Metals, 407 So.2d 380, 381 (Fla. 1st DCA 1981). This court in Jerry's South, Inc. v. Morran, 582 So.2d 803, 804 (Fla. 1st DCA 1991), did state, "When considering a petition for writ of certiorari, this court considers the record as it existed at the time the complained of discovery order was entered." At issue in Jerry's South, however, was a discovery request *855 seeking financial records of a former party to the litigation. Therefore, at the time of the discovery request, the issues in Jerry's South had narrowed. In the instant case, however, the issues in litigation expanded significantly after the entry of the complained-of discovery order. The requests must be viewed in light of those expanded issues.
The scope of permissible discovery is set forth in Florida Rule of Civil Procedure 1.280(b)(1) as follows:
Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
The trial court, in deciding whether a party should be required to respond to a given discovery request, should weigh the relevance of the information sought against the burdensomeness of the request. Wood v. Tallahassee Memorial Regional Medical Center, Inc., 593 So.2d 1140 (Fla. 1st DCA 1992), petition for review denied, 599 So.2d 1281 (Fla. 1992). Moreover, even if material sought is relevant to the subject matter of a case and admissible or reasonably calculated to lead to admissible evidence, such material may not be discovered if privileged. State Farm Fire and Casualty Company v. Von Hohenberg, 595 So.2d 303 (Fla. 3d DCA 1992).
The instant requests for exhaustive biographical information (e.g., lengthy employment and residence histories, social security numbers, dates and places of birth) on persons not shown to have any discernible relationship to the issues of the case (e.g., Krypton stockholders) and requests for voluminous documents (e.g., all documents concerning the election of various officers and all minutes of stockholders meetings for seven years) having no relationship to the issues in the case, appear to be a classic "fishing expedition" and clearly calculated for harassment. The request for "any other information useful or necessary for the location of all persons who are believed or known by defendant KRYPTON ... its attorneys ... to have any knowledge" of various matters, appears, as Krypton contends, unduly vague and a request for matters protected by the workproduct privilege. See, e.g., Landrum v. Tallahassee Memorial Regional Medical Center, Inc., 525 So.2d 994, 995 (Fla. 1st DCA 1988). The request for all documents evincing any communication between Krypton and any other person or entity concerning the subject matter of this lawsuit is broad enough to encompass documents protected by the attorney-client or other privileges. Incredibly, certain of the requests for production seek voluminous numbers of documents, while certain of the interrogatories seek written summarizations of the contents of the same documents. We hold that the order requiring Krypton to respond to the interrogatories and requests for production was a substantial departure from the essential requirements of law.
On remand, the trial court is directed to strike the interrogatories and requests for production in their entirety, without prejudice to MGM's right to conduct further discovery in accordance with Florida Rule of Civil Procedure 1.280. Because MGM's present requests seek voluminous, privileged, and extraneous information, and constitute a clear abuse of the discovery process, MGM shall be required to file any further requests for any of the information sought in the present requests with the court. In the event of objection, MGM shall have the burden of demonstrating that such requests are within the parameters of Rule 1.280. The trial court may, at MGM's expense, appoint a special master for the purpose of hearing argument on, and rendering a recommended disposition of, any such further disputes.
For the benefit of the trial court and the parties on remand, we address Krypton's complaint that it should not have been required *856 to produce documents at the offices of MGM's counsel. Where an objection is made to the "time, place or manner" of production, and the parties are unable to agree, the court may, on motion, enter an order under Florida Rules of Civil Procedure 1.350(b) and 1.380(a), specifying the time, place, and manner of production, and further determine which party is to pay the costs of preparing and transporting the documents to the place of production. If inspection of the documents at Krypton's place of business is for some reason impractical, MGM is certainly entitled to request production of the documents at a location with better working conditions. The cost of accommodating this request should, absent unusual circumstances, be borne by MGM, the party making the request. Evangelos v. Dachiel, 553 So.2d 245, 246-247 (Fla. 3d DCA 1989), citing Schering Corp. v. Thornton, 280 So.2d 493, 494 (Fla. 4th DCA 1973); and Cooper v. Fulton, 117 So.2d 33, 36 (Fla.3d DCA 1960).
Certiorari is granted. The order below is quashed, and this cause is remanded for proceedings consistent herewith.
SMITH and WOLF, JJ., concur.