# Third District Court of Appeal

## State of Florida

Opinion filed August 6, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-380
Lower Tribunal No. 13-23414
_____

**Mark Rousso and The Alhadeff Law Group, P.L.,**
Petitioners,

vs.

**William Scott Hannon, individually, and G & S Realty Advisors Corp., a Florida corporation,**
Respondents.


A Writ of Certiorari to the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

The Alhadeff Law Group, P.L., and Mark C. Alhadeff, for petitioners.

Arnaldo Velez, P.A., and Arnaldo Velez, for respondents.


Before ROTHENBERG, SALTER, and LOGUE, JJ.

ROTHENBERG, J.

Mark Rousso ("Rousso") and The Alhadeff Law Group ("Alhadeff") (collectively, "the petitioners") petition this Court for certiorari relief from the trial court's order denying their motions for a protective order, which effectively allows irrelevant discovery of their financial information and potentially privileged attorney–client communications although they are not in any way involved in the case pending below. Because the order departs from the essential requirements of law and would cause damage not redressable on direct appeal, we grant the petition and quash the order below.

The underlying action is a contract dispute stemming from a transaction in which the plaintiff, Andrew Mirmelli ("Mirmelli"), contacted the defendant–respondent, William Scott Hannon ("Hannon"), regarding the potential sale of a commercial parking lot in Miami. Before Hannon, who was acting as a real estate agent for the owner and potential seller of the lot, agreed to provide any information to Mirmelli, he required that Mirmelli sign a document titled "The Gateway Confidentiality/Non-Circumvention Agreement" ("the Agreement"). This Agreement forbade Mirmelli from disclosing any of the information furnished by Hannon to third parties and from circumventing Hannon by contacting another realty service or agent to pursue Mirmelli's purchase of the property. The Agreement specifically states that nothing therein constitutes an offer of sale and

that the seller, Hannon, could solicit other offers or sell the property to a third party without notice to Mirmelli.

Shortly after Mirmelli signed the Agreement, Rousso, a non-party to the Mirmelli–Hannon Agreement, purchased a commercial parking lot in the area. Mirmelli brought suit against Hannon to rescind their Agreement and recover damages for the lost potential to purchase the parking lot. Mirmelli alleged that Hannon had not provided the evaluation materials as mandated in the Agreement and that Hannon had otherwise wrongfully induced Mirmelli into signing the Agreement.[1] Hannon responded by denying the substance of Mirmelli's allegations and raising the affirmative defense that he could not be held personally liable because he was working as an agent. Hannon has not raised any counterclaims against Mirmelli and has not interpleaded Rousso or Alhadeff. Thus, Rousso and Alhadeff currently stand as wholly unrelated non- parties to the underlying litigation.

During the course of the litigation, Hannon sought discovery of Rousso's financial information and communications between Rousso and Alhadeff, Rousso's legal counsel, purportedly to obtain details regarding the sale of the parking lot. Rousso and Alhadeff moved for a protective order, claiming that their

---

[1] The causes of action alleged in Mirmelli's complaint are: Fraudulent inducement (Count 1); Negligent inducement (Count 2); Intentional breach of fiduciary duty (Count 3); Negligent breach of fiduciary duty (Count 4); Rescission (Count 5); and Declaratory relief stating that the contract is invalid (Count 6).

purchase of the lot was irrelevant to Mirmelli's pending claims against Hannon, particularly because Rousso and Alhadeff were not involved in the litigation, their financial information is presumed confidential, and the communications between Rousso and his counsel could be protected by the attorney–client privilege. In response, Hannon argued that the facts of the sale were relevant in the Mirmelli–Hannon litigation because the transaction appeared fishy[2] to him given the odd procedural background. The trial court denied the motion for a protective order, and Rousso and Alhadeff were ordered to submit to the discovery requests. Rousso and Alhadeff have filed this petition to contest that ruling.

A writ of certiorari is an extraordinary type of relief that is granted in very limited circumstances. Citizens Prop. Ins. Corp. v. San Perdido Ass'n, 104 So. 3d 344, 351-52 (Fla. 2012). To invoke an appellate court's certiorari jurisdiction, "[t]he petitioning party must demonstrate that the contested order constitutes '(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case[,] (3) that cannot be corrected on postjudgment appeal.'" Bd. of Trs. of Internal Improvement Trust Fund v. Am. Educ. Enters., 99 So. 3d 450, 454 (Fla. 2012) (alteration in original) (quoting Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 822 (Fla. 2004)). Certain types of discovery "'may reasonably cause material injury of an irreparable nature.' . . . But not every

_____

[2] Hannon's counsel eloquently explained that the whole thing "reek[s]."

4

erroneous discovery order creates certiorari jurisdiction because some orders are subject to adequate redress by plenary appeal from a final judgment." Allstate Ins. Co. v. Langston, 655 So. 2d 91, 94 (Fla. 1995) (quoting Martin-Johnson, Inc. v. Savage, 509 So. 2d 1097, 1100 (Fla. 1987)). We find that the petitioners have met their burden of proving the elements necessary for certiorari relief.

Discovery is limited to those matters relevant to the litigation **as framed by the parties' pleadings**. Diaz-Verson v. Walbridge Aldinger Co., 54 So. 3d 1007, 1011 (Fla. 2d DCA 2010); Capco Props., LLC v. Monterey Gardens of Pinecrest Condo., 982 So. 2d 1211, 1213-14 (Fla. 3d DCA 2008); Richard Mulholland & Assocs. v. Polverari, 698 So. 2d 1269, 1270 (Fla. 2d DCA 1997); Krypton Broad. of Jacksonville, Inc. v. MGM-Pathe Commc'ns Co., 629 So. 2d 852, 854 (Fla. 1st DCA 1993), disapproved on other grounds by Allstate, 655 So. 2d at 95. In the instant case, Mirmelli's complaint and Hannon's affirmative defenses do not implicate the financial records of Rousso or Alhadeff. See Diaz-Verson, 54 So. 3d at 1011 ("Here, the pleadings, i.e., the second amended complaint, do not establish the relevance of any of Diaz-Verson's personal financial information, and the unsworn representations of counsel at a hearing, even if somehow properly considered, cannot create relevance where it does not otherwise exist."). As such, the order below clearly departs from the essential requirements of law.

Moreover, both types of information Hannon seeks—third party financial records and records kept by an attorney about his non-party client[3]—are of the utmost sensitivity and are not discoverable unless the party seeking discovery establishes a need for the discovery sufficient to overcome the privacy rights of the third party. Westco, Inc. v. Scott Lewis' Gardening & Trimming, Inc., 26 So. 3d 620, 622 (Fla. 4th DCA 2009) ("When confidential information is sought from a non-party, the trial court must determine whether the requesting party establishes a need for the information that outweighs the privacy rights of the non-party."). This heightened standard is necessary because "'the disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant,'" Rappaport v. Mercantile Bank, 17 So. 3d 902, 906 (Fla. 2d DCA 2009) (quoting Straub v. Matte, 805 So. 2d 99, 100 (Fla. 4th DCA 2002)), and because "personal finances are among those private matters kept secret by most people." Woodward v. Berkery, 714 So. 2d 1027, 1035 (Fla. 4th DCA 1998) (citing Winfield v. Div. of Pari-Mutuel Wagering, 477 So. 2d 544 (Fla.1985)).

---

[3] Rousso argues that the information sought may potentially implicate the attorney–client privilege, although it is unclear whether or not privilege would apply to the precise documents sought based on the scant record available. Even if attorney–client privilege does not attach to the information sought, the trial court still erred in allowing discovery of confidential financial information in these circumstances.

Likewise, "[c]onfidential communications between lawyers and clients are privileged from compelled disclosure to third persons. . . . When communications appear on their face to be privileged, the party seeking disclosure bears the burden of proving that they are not." Shell Oil Co. v. Par Four P'ship, 638 So. 2d 1050, 1050 (Fla. 5th DCA 1994) (citations omitted); see also Ford Motor Co. v. Hall-Edwards, 997 So. 2d 1148, 1153 (Fla. 3d DCA 2008) (holding that "the attorney-client privilege . . . protects confidential communications between a lawyer and client, as well as third persons to whom disclosure is in furtherance of the rendition of legal services and those reasonably necessary for the transmission of the communication."); Am. Tobacco Co. v. State, 697 So. 2d 1249, 1252 (Fla. 4th DCA 1997) ("The attorney-client privilege is the oldest confidential communications privilege known in the common law.").

The dissent would hold that the discovery order at issue merely allows discovery on a relevant issue that can be properly safeguarded by requiring the parties to sign a confidentiality agreement, and therefore, no irreparable harm has been demonstrated. Respectfully, tangential relevance is not enough when it comes to confidential records of a non-party, and a confidentiality agreement, while it can help reduce the impact of improper discovery, does not grant a party carte blanche to obtain documents to which it has no right. The petition is being

granted because the requested discovery constitutes a trolling exercise through the confidential and potentially privileged records of a non-party.

The dissent argues that the requested discovery is relevant to the allegations in Mirmelli's complaint because the financial and legal details of the petitioners' transactions could potentially reveal that Mirmelli himself indirectly purchased the underlying property. While technically true, this reasoning overlooks the following. First, there is no factual basis in the record supporting the dissent's speculation that the petitioners are in any way related to Mirmelli, and Mirmelli's complaint directly avers that he did not purchase the subject property. Second, the examination of **any person's** financial information could reveal that they acted under Mirmelli's direction. Although discovery is meant to be broad, it is not without limits. Third, the **only** way the requested discovery could be relevant is if Mirmelli himself purchased the property through the petitioners, and there is a much simpler and less invasive way to unearth this precise information: direct discovery served on Mirmelli.[4]

Moreover, confidential discovery sought from **third parties** is not subject to a mere relevance inquiry as the dissent implies; rather, the respondents must

---

[4] At the very least the trial court should have conducted an in-camera review of the documents to determine whether they are confidential or relevant before compelling disclosure of the non-party documents claimed to be confidential. Westco, 26 So. 3d at 622 ("A trial court departs from the essential requirements of law in ordering production of confidential information without conducting an in camera review to determine whether the assertion of privilege is valid.").

8

establish a need for the information that outweighs the privacy interests of the third party. <u>Westco</u>, 26 So. 3d at 622 ("When confidential information is sought from a non-party, the trial court must determine whether the requesting party establishes a need for the information that outweighs the privacy rights of the non-party."); <u>see also</u> <u>Berkeley v. Eisen</u>, 699 So. 2d 789, 791 (Fla. 4th DCA 1997); <u>CAC-Ramsay Health Plans, Inc. v. Johnson</u>, 641 So. 2d 434, 435 (Fla. 3d DCA 1994); <u>Aetna Life Ins. Co. v. Hausman</u>, 598 So. 2d 223, 224 (Fla. 5th DCA 1992); <u>Higgs v. Kampgrounds of Am.</u>, 526 So. 2d 980, 981 (Fla. 3d DCA 1988) (citing <u>Rasmussen v. South Fla. Blood Serv.</u>, 500 So.2d 533, 535 (Fla.1987)).

While we recognize that mere overbreadth of a discovery order is insufficient reason to grant the extraordinary remedy of certiorari, <u>see</u> <u>Bd. of Trs. of Internal Improvement Trust Fund,</u> 99 So. 3d at 456, the trial court's order in this case is not just overly broad, it allows the discovery of confidential financial information and potentially privileged communications from third parties wholly unrelated to the litigation. Discovery orders that require the disclosure of claimed confidential information are reviewed with greater caution than those that are simply burdensome or costly due to overbreadth. <u>Megaflight, Inc. v. Lamb</u>, 749 So. 2d 594, 595 (Fla. 5th DCA 2000) ("[W]e agree with those who suggest that erroneous orders that require overbroad discovery of nonprivileged documents should be subjected to certiorari review more cautiously than erroneous orders

9

requiring discovery of confidential or privileged matters."), quoted by, Bd. of Trs. of Internal Improvement Trust Fund, 99 So. 3d at 456. Indeed, an order requiring the disclosure of confidential "cat-out-of-the-bag" information is precisely the type of order that can cause irreparable harm. Allstate, 655 So. 2d at 94.

One need look no further than the facts underlying this case to see that the information sought is both valuable and confidential. Hannon himself required Mirmelli to sign a confidentiality and non-disclosure agreement before he would let Mirmelli see any information regarding the property and sale, and now, ironically, Hannon seeks to comb through the same type of information from a non-party competitor based on nothing more than a hunch and desire to do so. Hannon simply has not shown, based on the record, that his need for the information sought outweighs the privacy rights of Rousso and Alhadeff because the only information sought can be more easily obtained through Mirmelli.

Finally, the dissent would hold that Hannon's purported willingness to sign a confidentiality agreement vitiates any concern about improper discovery in this case. Such a holding is overly broad and would effectively eliminate the privacy rights of **any** person even remotely involved in litigation. Confidentiality agreements can be useful tools to protect the privacy interests of those from whom discovery is sought when the information is necessary to the litigation but otherwise confidential or proprietary. See Cordis Corp. v. O'Shea, 988 So. 2d

1163, 1166-67 (Fla. 4th DCA 2008); Wal-Mart Stores E., L.P. v. Endicott, 81 So. 3d 486, 490-91 (Fla. 1st DCA 2011). However, such agreements are merely to limit the impact of private information to which the party seeking discovery is entitled, not to broaden the scope of discoverable material.

Even with a confidentiality agreement in place, non-parties Rousso and Alhadeff would have to disclose their private financial information to Hannon, a potential competitor who has no ascertainable right to that information based on this record. The point is not that Hannon has agreed not to disseminate the information recovered to others, the point is that Hannon has not shown that he is entitled to the information in the first place, and a confidentiality agreement does not change that conclusion.

The trial court's order below requires the non-parties Rousso and Alhadeff to disclose confidential and personal financial information, as well as potentially privileged attorney–client communications, based solely on Hannon's counsel's suspicions, which currently have no basis in the pleadings. Any relevant information in those documents could be more easily procured by serving discovery directly on Mirmelli, and therefore, the respondents are unable to establish a need for the non-party discovery as required by the balancing test established in Higgs. 526 So. 2d at 981. The order accordingly departs from the essential requirements of law and would cause material injury to Rousso and

11

Alhadeff that cannot be remedied on appeal. Therefore, certiorari relief is appropriate. Indeed a writ of certiorari is often the only method of relief for non-parties subjected to improper discovery orders because non-parties necessarily have no adequate remedy on direct appeal. Rappaport, 17 So. 3d at 905 (citing Price v. Hannahs, 954 So. 2d 97, 100 (Fla. 2d DCA 2007)).

We therefore grant the petition and quash the order below. This ruling shall be without prejudice to Hannon to seek discovery in the future should the financial information in question be properly put in issue in the litigation through the parties' pleadings or if Hannon can demonstrate a need for the discovery that outweighs the privacy rights of Rousso and Alhadeff.

Petition granted; order quashed.

SALTER, J., concurs.

Mark Rousso and The Alhadeff Law Group, P.L. v. William Scott Hannon, individually, and G & S Realty Advisors Corp., etc.

Case No. 3D14-380

LOGUE, J., (dissenting)

The majority issues a writ of certiorari to protect third parties Mark Rousso and the Alhadeff Law Group, P.L. from certain discovery. The majority concludes that the discovery requested is irrelevant to the issues raised by the pleadings in this case. The discovery at issue is framed to establish the identity of the investors who, on May 14, 2013, purchased the parking lot located at 208 West Flagler. The identification of the investors will either negate or affirm one of the crucial facts expressly alleged in the complaint and denied in the answer. It seems to me, therefore, that the discovery is highly relevant to the issues raised in the pleadings.

In addition, given our limited scope of review on certiorari, I do not believe that we can hold that the trial judge departed from the essential requirements of law when he impliedly determined a confidentiality agreement could adequately protect the petitioner's unquestioned privacy interests. I respectfully dissent.

FACTS AND PROCEDURAL HISTORY

Andrew Mirmelli wanted to purchase or lease parking lots on the 200 block of West Flagler. To this end, he entered into a confidentiality and non-circumvention agreement with William Scott Hannon and G & S Realty Advisors Corporation (collectively, "Hannon"). Summarizing the agreement in very general

13

terms, Hannon promised to provide Mirmelli with information about Hannon's progress in purchasing such lots with the idea that Mirmelli might purchase, lease, or invest in lots acquired by Hannon. As part of the arrangement, Mirmelli agreed not to try to directly purchase the lots and agreed to keep confidential both his interest in the lots and any information Hannon provided to him. This arrangement burst when unknown investors, on May 14, 2013, purchased a parking lot on the 200 block of West Flagler, namely the parking lot located at 208 West Flagler.

In the complaint, Mirmelli sued Hannon to be released from the agreement and for damages. His complaint alleged he was damaged because he was not one of the investors who purchased the parking lot. In this regard, the complaint alleged:

> 18. Subsequent to meeting with Defendant, HANNON, Plaintiff, MIRMELLI learned that a property was for sale located at 208 West Flagler Street. This property was later sold to a third party.
>
> 19. Due to the actions and/or inactions of Defendants, HANNON and G & S, Plaintiff, MIRMELLI did not purchase this property or any other property located on this block.
>
> . . . .
>
> 21. . . . . [A]s a direct and proximate result of the Defendants' false or materially misleading statements regarding same, the Plaintiff has incurred substantial damages, including, without limitation, the ability to purchase, and/or lease a parking lot located at 208 West Flagler Street . . . .

(emphasis added). In the answer, Hannon expressly denied each of these allegations.

In the discovery at issue, Hannon sought to test these allegations by discovering the identity of the investors who were behind the purchase, on May 14, 2013, of the "parking lot located at 208 West Flagler."

First, Hannon subpoenaed Mark Rousso, the manager of Miami Flagler Parking Lots, LLC, the company that purchased the 208 West Flagler property. Hannon requested that Rousso provide the following documents:

1. All agreements between Miami Flagler Parking Lots, LLC and Andrew Mirmelli.

2. All communications between you and Andrew Mirmelli. This will include all emails and text messages. If these have not been printed out, you are requested to have these available in downloadable form.

3. Any and all documents showing the source of the funds used by Miami Flagler Parking Lots, LLC to acquire or purchase the real property identified in the attached deed. [The attached warranty deed identified the parking lot located at 208 West Flagler by its legal description].

4. The sales contract for the acquisition of the real property identified in the deed attached hereto.

Second, Hannon subpoenaed the records custodian of the Alhadeff law firm and requested the custodian to bring the following records:

1. All records pertaining to the deposit placed with respect to the attached contract [for sale of the parking lot located at 208 West Flagler on May 14, 2013] to include, but not be limited to:

15

a. Copies of any checks delivered to the firm that comprise the deposit;

b. If the deposit was placed by wire transfer, the advise [sic] issued by the bank into which the deposit was placed;

c. Any documentation that shows or reflects the source of the deposit;

d. The deposit slip pertaining to the deposit into the firm's account;

e. The trust account records of the firm pertaining to the deposit, in particular, those required by Rule 5-1.2 of the Rules Regulating Trust Accounts.

Rousso and Alhadeff filed the petition at issue. Their main argument focused on the contention that the subpoenaed records were financial records from third parties that were not relevant.[5]

## ANALYSIS

In the first place, the narrowly-focused discovery at issue strikes me as highly relevant to the pleadings. The records that were subpoenaed will almost certainly reveal the identity of the investors who purchased the parking lot. The identity of the investors will either affirm or negate an allegation crucial to Mirmelli's causes of action. Central to Mirmelli's complaint is that he was not involved in the purchase of the parking lot that occurred on a particular date. Mirmelli expressly alleged this fact in the complaint; Hannon expressly denied

---

[5] Neither side adequately briefed the issue of whether the records requested from the law firm were protected by the attorney client privilege. For purposes of this dissent I assume those records reflect confidential financial information but not matters protected by the attorney client privledge.

Mirmelli's allegation in the answer. If the discovery shows that Mirmelli was not one of those investors, Mirmelli's disputed allegation on this point would be established. If, on the other hand, the discovery shows that Mirmelli was, in fact, one of those investors, his claim of being damaged because he was not one of the investors would collapse. This discovery is relevant to the pleadings because it addresses a crucial fact alleged in the complaint and denied in the answer.

The more difficult issue, to me, concerns the fact that some, but not all, of the requested information is either confidential or privileged.[6] The parties spent very little time on this point. On this point, however, Hannon, the party seeking the discovery, announced in open court that he would sign a confidentially agreement. The Florida Supreme Court has held that such an agreement, when submitted to the court as an agreed protective order, can be an acceptable method to protect the confidentiality of records and thereby mitigate an irreparable harm that might result from disclosure. <u>Bd. of Trs. of Internal Improvement Trust Fund v. Am. Educ. Enters., LLC</u>, 99 So. 3d 450, 459 (Fla. 2012) ("The rules of discovery provide sufficient means to limit the use and dissemination of discoverable information via protective orders, and it is the responsibility of the trial court to decide whether to employ those means in this case.").

---

[6] No one has suggested that the request for records of agreements and communications between Mirmelli and Miami Flagler Parking Lots, LLC implicates privileged materials.

17

Although <u>Board of Trustees</u> involved discovery between parties, its statement regarding confidentiality orders applies equally as well to discovery from third parties. Petitioners have not argued, much less demonstrated, that it is impractical to draft a confidentiality order sufficient to protect their admittedly legitimate privacy interests.

I respect the concern of the majority to protect persons who are not parties to the litigation from discovery requests that may burden or even harm them. But our rules of civil procedure envision discovery being taken from parties and non-parties alike. Few lawsuits could proceed without testimony or documents from third parties. I believe district courts should refrain from being drawn into attempts to supervise the timing, sequence, or contents of discovery from our remote vantage point on an appellate court. Our law places the responsibility to manage the unfolding of discovery in the sound discretion of our circuit and county judges.

For this very reason, the standard governing the issuance of a writ of certiorari requires the reviewing court to find that the lower court departed from the essential requirements of law. This means more than mere legal error: "[i]t means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice." <u>Vill. of Palmetto Bay v. Palmer Trinity Private</u>

Sch., Inc., 128 So. 3d 19, 20 (Fla. 3d DCA 2012) (citations and quotations omitted).

In this case, the trial judge essentially determined a confidentiality agreement was sufficient to protect the privacy interest of third parties regarding discovery that will either prove or disprove a factual issue expressly alleged in the complaint and denied in the answer. In the record of this case, the trial court's decision does not constitute a departure from the essential requirements of the law justifying the issuance of the extraordinary writ of certiorari. I would leave this discovery dispute in the good hands of the seasoned trial judge, which is where I believe our law intends it to be.