# Third District Court of Appeal

## State of Florida

Opinion filed December 14, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2316
Lower Tribunal No. 06-37622 B

_____

**Bjon Lee,**
Petitioner,

vs.

**Sean Condell and Jose Estache,**
Respondents.

On Petition for Writ of Certiorari to the Circuit Court for Miami-Dade County, Ellen Sue Venzer, Judge.

Eugene F. Zenobi, Criminal Conflict and Civil Regional Counsel, Third Region of Florida and Philip Louis Reizenstein, Assistant Regional Counsel, for petitioner.

Richard K. Houlihan; Richard C. Klugh, for respondent Sean Condell; Jeffrey H. Fink, for respondent Jose Estache.

Before SHEPHERD, LAGOA, and LOGUE, JJ.

LAGOA, J.

Petitioner, Bjon Lee ("Lee"), seeks a writ of certiorari directed toward the

trial court's discovery order compelling production of Lee's own handwritten notes

(the "Notes"). Because we find that Lee's Notes are not subject to the attorney-client privilege as a "communication" under section 90.502(1)(c), Florida Statutes (2014), we deny the petition.

I.      FACTUAL & PROCEDURAL HISTORY

On July 16, 2013, pursuant to a written plea agreement with the State, Lee entered a plea of guilty to reduced charges of second degree murder, and attempted felony murder (Counts I and II).[1]  In consideration of a deferred sentence, Lee agreed to give a sworn statement detailing both his involvement in the crime, as well as the involvement of his co-defendants, provide assistance and cooperation to the State, and testify truthfully in depositions and at trial.  The trial court accepted Lee's plea and ratified the terms of the plea agreement.

Counsel for Lee's co-defendants, Sean Condell ("Condell") and Jose Estache ("Estache") (collectively, "Respondents"), deposed Lee over multiple days.  On September 22, 2014, during his deposition, Lee disclosed that, while he was awaiting trial in jail, he prepared the Notes on two or three occasions for his "personal use."  Lee also stated that he did not give his attorney a copy of the Notes, but that he "discussed it with her."  Specifically, at his deposition, Lee testified as follows:

BY MR. HOULIHAN [Counsel for Condell]:

---

[1] Pursuant to the plea agreement, the State agreed to abandon Counts III to VI.

2

Q.  Have you ever to this date written out anything in your own hand concerning this case?

A.  Yes, sir.

Q.   How many times?

A.  Two or – two times or three times.

Q.  And to who did you write it out for?

A.  For me, my personal use, and one time, I wrote a letter to Damian.

Q.  Okay.  So two or three times, you just wrote to yourself and I guess it's to help you remember things?

A.  Yes, sir.

Q.  About keeping your story straight; right?

A.  Yes, sir.
    MR. GILBERT [Counsel for State]: Objection to the form of the question.
    MR. LEDEE [Counsel for State]:  Come on, man.

Q.  Do you still have those?

A.  Yes, sir.

Q.  Okay, because you keep referring to them; right?

A.  Yes, sir.

Q.  And this is your own statement about our case in your own words?

A.  Yes, sir.


*     *     *


BY MR. JEPEWAY [Counsel for Rayon Samuels]:

Q.  You wrote out three statements; correct?

A.  Yeah, for my personal use.

Q.  Yes.

A.  Yes, sir.

Q.  All right. Would you mind producing those?
    MR. GILBERT: I have an objection.
    MS. PETERSON [Counsel for Lee]:   I would object as well; privilege.
    MR. JEPEWAY:   Okay, and why is that?
    MS. PETERSON:   I would object to privilege.
    MR. NALLY [Counsel for Damian Lewis]:  What privilege?

3

MR. PETERSON: Preparation for trial.
MR. NALLY: What privilege is that?
MR. JEPEWAY: He said it's for his personal use.
MR. GILBERT: Attorney-client privilege.

Counsel for Respondents moved to compel production of the Notes and Lee filed a memorandum in opposition, asserting that the Notes were not discoverable pursuant to the attorney-client privilege. At an evidentiary hearing on Respondents' motion to compel, counsel for Lee advised the trial court that they were unaware of the existence of the Notes until Lee's deposition was underway. At that hearing, Lee testified—for the first time—that he wrote the Notes in anticipation of trial in order to discuss "strategy" with his attorneys. During cross-examination by Condell's counsel, however, Lee again acknowledged that the Notes were for his personal use.

Following an *in camera* inspection and hearing, the trial court issued a comprehensive, detailed written order containing findings of fact and conclusions of law. Specifically, the trial court found that the Notes did not reflect any conversations Lee had with counsel or any trial strategy his attorneys shared with him. The trial court further found that the Notes contained Lee's recitation and musings concerning certain facts of the case and his relationships with Respondents. On September 9, 2015, the trial court granted Respondents' motion to compel production, stating "[n]o privilege exists and the notes are subject to the discovery rules." This petition followed.

4

II.   ANALYSIS

"A writ of certiorari is an extraordinary type of relief that is granted in very limited circumstances." Rousso v. Hannon, 146 So. 3d 66, 69 (Fla. 3d DCA 2014). To be entitled to certiorari, the petitioner must establish the following three elements: "'(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.'" Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 822 (Fla. 2004) (quoting Bd. of Regents v. Snyder, 826 So. 2d 382, 387 (Fla. 2d DCA 2002)). "The latter requirements constitute irreparable harm, and irreparable harm is a condition precedent to invoking certiorari jurisdiction that should be considered first." Lacaretta Rest. v. Zepeda, 115 So. 3d 1091, 1092 (Fla. 1st DCA 2013) (citing Spry v. Prof'l Employer Plans, 985 So. 2d 1187, 1188 (Fla. 1st DCA 2008)); see also Bd. of Trs. of the Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC, 99 So. 3d 450, 454–55 (Fla. 2012) (stating that irreparable harm is a condition precedent to invoking a district court's certiorari jurisdiction); Nucci v. Target Corp., 162 So. 3d 146, 151 (Fla. 4th DCA 2015) (same).

Certiorari jurisdiction is not available to review every erroneous discovery ruling. See Bd. of Trs. of the Internal Improvement Trust Fund, 99 So. 3d at 456; Nucci, 162 So. 3d at 151. However, "[d]iscovery of information protected by privilege 'may reasonably cause material injury of an irreparable nature.'" Lacaretta, 115 So. 3d at 1092 (quoting Allstate Ins. Co. v. Langston, 655 So. 2d 91,

5

94 (Fla. 1995)). Therefore, "if there has been a departure from the essential requirements of law regarding [the attorney-client] privilege, the harm is indeed irreparable." Lacaretta, 115 So. 3d at 1092-93. "'Departure from the essential requirements of law' is defined the same way across all uses of certiorari review: 'a violation of a clearly established principle of law resulting in a miscarriage of justice.'" Id. at 1093 (citations omitted).

The attorney-client privilege governed by the Florida Evidence Code, is codified at section 90.502, Florida Statutes (2014), which states that a communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons, other than:

> 1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.
> 2. Those reasonably necessary for the transmission of the communication.

§ 90.502(1)(c), Fla. Stat.[2]

"[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. U.S., 449 U.S. 383, 390 (1981) (citing Trammel v. U.S., 445 U.S. 40, 51 (1980)). "Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." Fisher v. U.S., 425 U.S. 391, 403 (1976). Nevertheless, "since the privilege has

---

[2] While section 90.502(4), Florida Statutes, provides several exceptions to the attorney-client privilege, none apply here.

the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose." Id.

Indeed, as the Law Revision Council Note to section 90.502, Florida Statutes, states, "the privilege belongs to the client and is applicable only when a communication is for the purpose of facilitating the rendition of professional legal services to the client. No communication, no matter how confidential or relevant to the client's business or personal affairs, is privileged unless it materially facilitates the rendition of legal services by a lawyer." § 90.502, Fla. Stat. Ann. (West 1999) (Law Revision Council Note—1976).

Consequently, the issue before this Court rests on whether the Notes are a "communication" as referenced in section 90.502(1)(c), and therefore subject to the attorney-client privilege. If the Notes are subject to the attorney-client privilege, Lee would meet his burden of proving the elements necessary for certiorari relief.

After an evidentiary hearing and after conducting an *in camera* review of the Notes, the trial court "concluded that the notes do not reflect any conversations Lee had with counsel or any trial strategy his counsel shared with him." Specifically, the trial court found that "Lee's claims that he wrote these notes for the purpose of using them for 'trial strategy' with his attorneys and that the notes were made during meetings with counsel totally lacking in credibility." Moreover, the trial court in its written order found that, "[e]ven a cursory review of the notes reflects

7

that the notes were a stream of consciousness rather than notes for a strategy session or done while taking notes during a conversation with another person."

The trial court further found that it was only after Lee's counsel went to see him in jail during a recess of the hearing on Respondents' motion to compel that Lee—for the first time—testified that he wrote the Notes as "trial preparations" so he could discuss "strategy" with his lawyers. Notably, the trial court found that as "Lee never gave the notes to his attorney (or even discussed them with her until after the deposition) – and obviously only after a plea was reached – they were not written for trial preparation or strategy purposes." Significantly, there was no testimony or other evidence presented that Lee's attorney requested he make the Notes, or that Lee intended the Notes to be delivered to his attorney. See Merlin v. Boca Raton Cmty. Hosp., Inc., 479 So. 2d 236, 239 (Fla. 4th DCA 1985) (concluding that a client's notes were protected by the attorney-client privilege because they were prepared for and transmitted to the attorney either in contemplation of or during the litigation); accord U.S. v. DeFonte, 441 F.3d 92 (2d Cir. 2006); Clark v. Buffalo Wire Works Co., Inc., 190 F.R.D. 93 (W.D.N.Y. 1999); Bernbach v. Timex Corp., 174 F.R.D. 9 (D. Conn. 1997).

In its written order, the trial court resolved Lee's conflicting testimony. "It is not the function of an appellate court to substitute its judgment for that of the trial court or to reweigh the evidence, absent a lack of substantial competent evidence." State, Fla. Highway Patrol v. In re: Forfeiture of Twenty Nine

Thousand Nine Hundred & Eighty (29,980.00) in U.S. Currency, 802 So. 2d 1171, 1172 (Fla. 3d DCA 2001). Because substantial, competent evidence exists to support the trial court's ruling, this Court will not disturb on appeal the trial court's resolution of the conflicting evidence. See State v. Stephens, 441 So. 2d 171 (Fla. 3d DCA 1983).

III.    CONCLUSION

Given these facts, we conclude that the trial court's findings rejecting the credibility of Lee's claim that the Notes were to be used for communication with counsel are supported by the record and will not be second guessed by the Court. See, e.g., Jenkins v. State, 978 So. 2d 116, 127 (Fla. 2008) ("[W]e are not permitted to second guess the credibility assessments of the trial court."). In compelling production of the Notes, the trial court made direct findings as to the purpose for which the Notes were made. See Merlin, 479 So. 2d at 238. The trial court's findings were based not only on Lee's deposition testimony that he prepared the Notes for his "personal use," but also Lee's counsel's statement at the evidentiary hearing that they were unaware of the existence of the handwritten Notes until Lee's deposition was underway. As such, we cannot conclude that the trial court's comprehensive order results in a miscarriage of justice. See Lacaretta, 115 So. 3d at 1093. In reaching our conclusion, this Court reiterates well-established law that trial courts are in the best position to evaluate the credibility of witnesses and appellate courts are obligated to give great deference to the findings

of the trial court. See Porter v. State, 788 So. 2d 917, 923 (Fla. 2001) ("We recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact."). Accordingly, because the Notes are not a "communication" pursuant to section 90.502(1)(c), they are not protected from disclosure, and Lee's petition for certiorari is denied.

PETITION DENIED.