Terrance M. CLARK, Anthony S. Miszuk, and Nick Nesteruk, a/k/a Nicholas Nesteruk, Plaintiffs,

v.

BUFFALO WIRE WORKS CO., INC., Defendant.

No. 95–CV–0482(F).

United States District Court, W.D. New York.

Oct. 26, 1999.

Hurwitz & Fine, P.C., Dan D. Kohane, of counsel, Buffalo, NY, for plaintiffs.

Brown & Kelly, LLP, Lisa T. Sofferin, of counsel, Buffalo, NY, for defendant.

DECISION and ORDER

CURTIN, District Judge.

## INTRODUCTION

In the present action, plaintiffs Clark, Miszuk, and Nesteruk have brought federal and pendent state discrimination claims against defendant Buffalo Wire Works Co., Inc. ("Buffalo Wire"). Plaintiffs allege that Buffalo Wire discriminated against them

based on their age when the company fired them in and around 1994. *See* Item 28, Ex. A. The present motion concerns Buffalo Wire's subpoenas duces tecum and a responding motion to quash the subpoenas.

On July 21, 1999, defendant Buffalo Wire served subpoenas duces tecum on Basile Korbut ("Korbut") and the law firm of Hurwitz & Fine. Item 54 ¶ 4; Item 56 ¶ 15. On July 26, 1999, Sheri Keeling of Hurwitz & Fine filed a motion to quash the subpoenas on the grounds that there was inadequate time to respond to the subpoenas and that the subpoenas requested privileged information. Item 54. Defendant submitted opposing papers on August 3, 1999. Item 56. On September 1, 1999, Korbut and Hurwitz & Fine replied in support of the motion to quash. Item 59. On October 1, 1999, Buffalo Wire submitted a reply affidavit of its own. Item 60. On October 5, 1999, the court heard oral argument on the matter. After considering the parties' papers and oral argument, the court now grants the motion to quash the subpoenas duces tecum.

## FACTS

On July 20, 1999, Korbut testified at a nonparty deposition in this action. At that deposition, Korbut spoke of notes that he had made while he was a supervisor with Buffalo Wire ("the Notes"). Item 59, Ex. D. Apparently, the Notes contained, among other things, Korbut's recollections of and opinions concerning work-related events and conversations. It appeared to Buffalo Wire that discovery of the Notes might reveal or lead to admissible evidence in the present action. Korbut stated at that deposition that he had given a complete copy of the Notes to Hurwitz & Fine in connection with that firm's legal services on his behalf.[1] *Id.*

Attorneys for Buffalo Wire served a subpoena duces tecum on both Korbut and the law firm of Hurwitz & Fine. In so doing, Buffalo Wire demanded production of the Notes. Hurwitz & Fine have refused to comply with Buffalo Wire's subpoena and claims that the requested documents are protected by both the attorney-client privilege and the work-product privilege.

Buffalo Wire states that no privilege protects the Notes because: (1) the Notes concern an action separate and apart from this one; (2) the Notes concern an action that was commenced and resolved prior to this one; and (3) Korbut made the Notes before Hurwitz & Fine started representing him. *See* Item 56, ¶¶ 17–19. Buffalo Wire emphasizes that Korbut created the majority of the Notes *before* Hurwitz & Fine represented him and then delivered the Notes to the firm only *after* he had created them. *See id.* Essentially, Buffalo Wire argues, in part, that Korbut cannot "push [the Notes] under the umbrella of privilege merely by turning [them] over to an attorney." *Moore's Federal Practice* § 26.49[1] and n. 6.

Hurwitz and Fine forwards two alternative arguments: (1) attorney-client privilege prohibits them from divulging information that Korbut gave them in connection with their confidential relationship, or (2) work-product privilege provides that Hurwitz & Fine need not disclose materials prepared in anticipation of litigation unless Buffalo Wire demonstrates substantial need and inability to secure the documents elsewhere. Item 59, ¶¶ 11–15.

In his own affidavit, Korbut states that he began making the Notes because he suspected that Guy Scheeler, President of Buffalo Wire, had plans to fire Korbut because of Korbut's age and national origin. Item 59, Ex. C, ¶ 7. In his affidavit, Korbut further states:

> The entire purpose of keeping notes regarding my work activities was to provide these notes to my counsel to assist them in representing me after my employment at Buffalo Wire Works Co., Inc. had concluded. . . . With regard to the notations which document various work-related activities during the course of my employ-

---

1. At the time of the deposition, Korbut speculated that he himself might have kept the original Notes and stored them in his home. Item 59, Ex. D. However, since that time Korbut has stated in an affidavit that he has thoroughly searched his belongings and cannot find any of the original Notes. Item 59, Ex. C, ¶ 14. Thus, the only issue before the court is whether Hurwitz & Fine can be compelled to disclose their copies of the Notes.

ment ..., it was always my intent that these notations would be used in a legal context to protect myself.

*Id.* ¶¶ 8, 11. Korbut continued to make notes after he had first consulted with an attorney from Hurwitz & Fine on August 31, 1994. Item 59, ¶ 11; Ex. C, ¶¶ 3, 5. Korbut avers that he gave the Notes to Hurwitz & Fine in the belief that the Notes "would be subject to the attorney-client privilege" and that he "provided them [with the Notes] to aid ... their pursuit of my legal remedies." *Id.* ¶ 10. Lastly, Korbut denies having reviewed the Notes in any way prior to his July 20, 1999, deposition. *Id.* ¶ 12.

## DISCUSSION

### I. *The Issue of Standing to Challenge the Subpoenas Duces Tecum*

The court acknowledges that there was initial confusion over which party should have brought this motion to quash the subpoenas duces tecum. *See* Items 54; 56, ¶ 28. Buffalo Wire argued that the court should dismiss plaintiffs' motion to quash because the plaintiffs obviously had no standing to make such a motion. *See* Item 56, ¶ 28. However, subsequent to the plaintiffs' being named as the party bringing the motion, the matter seemed to have been settled. At oral argument, Mr. Dan Kohane appeared on behalf of both Hurwitz & Fine and Korbut. As such, the court considers the present motion as having been submitted by the two parties who clearly have standing to challenge the

2. This confusion seems to trace to the multiplicity of Hurwitz & Fine's roles in this dispute. First, Hurwitz & Fine represented Korbut in an unrelated matter in 1994 and 1995. Second, Buffalo Wire served Hurwitz & Fine themselves with a subpoena duces tecum because Hurwitz & Fine are custodians of copies of the Notes. Lastly, Hurwitz & Fine are currently counsel for the plaintiffs in the present action.

3. The court notes that counsel for Buffalo Wire has relied on New York State law to support the position that materials produced in anticipation of *prior* litigation are not protected by the work-product doctrine in the context of *subsequent* litigation. *See Bennett v. Troy Record Co.*, 25 A.D.2d 799, 269 N.Y.S.2d 213 (N.Y.App.Div. 1966) (quoting 3 *Weinstein–Korn–Miller,* ¶ 3101.51). However, Buffalo Wire's reliance on state law is misplaced. First, the current action is predicated on a federal question. Therefore,

subpoenas duces tecum: Basile Korbut and, on behalf of Korbut, Hurwitz & Fine.[2]

### II. *Attorney–Client Privilege*

#### A. *Attorney–Client Privilege Protects the Notes from Discovery*

■ In order to claim the attorney-client privilege, a party must show that:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his [or her] subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his [or her] client (b) without the presence of strangers, (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Maloney v. Sisters of Charity Hospital,* 165 F.R.D. 26, 29 (W.D.N.Y.1995).

■ The question presented here is whether Korbut made privileged, confidential communications to Hurwitz & Fine when he turned the Notes over to Hurwitz & Fine "at some point after September 21, 1994." Item 59, Ex. C, ¶ 5. In light of the particular facts now before it, the court finds that the attorney-client privilege protects the Notes.[3]

the court must apply Rule 26 of the Federal Rules of Civil Procedure. Moreover, "the work product doctrine is a device providing qualified immunity from discovery rather than a traditional substantive privilege, [therefore,] Rule 501 of the Federal Rules of Evidence does not require that state law be applied [even in the context of a diversity action]." *Fine v. Facet Aerospace Products Co.*, 133 F.R.D. 439, 444–45 (S.D.N.Y.1990). The relevant rule set forth by the majority of federal courts in this circuit is: "Documents prepared for one litigation that would have been shielded [from discovery in that prior action] retain the protection in a second litigation *if the two actions are closely related in parties or subject matter." Garrett v. Metropolitan Life Ins. Co.*, 1996 WL 325725 at *4 (S.D.N.Y.1996) (emphasis added). In any event, the court need not resolve this issue because the issue of work-product immunity is moot in light of the court's holding that

In *Bernbach v. Timex Corp.*, 174 F.R.D. 9 (D.Conn.1997), defendant Timex moved to compel production of handwritten notes that the plaintiff Susie Sundholm had created. Mrs. Sundholm had created these notes in an effort to communicate with her attorneys. These notes consisted of "almost daily notes of events and conditions in her life which she felt were critical for her attorneys to know." *Id.* at 9. Furthermore, she "considered [the notes] ... to be personal and believed that the notes were to be used solely for the purpose of obtaining legal advice and assisting her attorneys in preparing the prosecution of her claims." *Id.* at 9–10. The court in *Bernbach* held that Mrs. Sundholm's notes "satisf[ied] the elements of the attorney-client privilege." *Id.* at 10.

Korbut's notes bear a substantial similarity to Mrs. Sundholm's notes in *Bernbach.* Korbut made the Notes in order to inform an attorney about facts from his daily life that he considered to be relevant to his potential legal remedies. As such, he made the Notes for the purpose of seeking legal advice from an attorney.

It also appears that the Notes qualify as a "communication" from Korbut to his attorneys because, as in *Bernbach,* even though his attorneys "did not read the notes contemporaneously with their creation," this cannot "change the fact that the notes were created by [Korbut] to communicate" with his attorneys. *Bernbach,* 174 F.R.D. at 10.

In addition, Korbut has described how he created and communicated the Notes to his attorneys "in the strictest of confidence" and believed that the Notes would not be subject to any future disclosure. Item 59, Ex. C, ¶¶ 7–11. There is no evidence that this confidence has been breached. As such, the Notes should be protected by the attorney-client privilege.

In addition, *Angst v. Mack Trucks, Inc.*, 1991 WL 86931 (E.D.Pa.), is instructive. Defendant Mack Trucks moved to compel production of notes made by plaintiff Thomas Shappell. Mr. Shappell indicated that he originally had made a set of handwritten notes concerning facts relevant to the action.

*Id.* at *1. Apparently, these handwritten notes were for his own personal use and reference. Later, Mr. Shappell summarized the handwritten notes in a *typewritten* form. *Id.* He then destroyed the handwritten notes. *Id.* Mr. Shappell testified that he had made the typewritten notes "in trying to obtain an attorney just to brief him on what the case was about." *Id.*

The court noted that "because the typed notes were made for the primary purpose of securing counsel, *they ordinarily would be privileged.*" *Id.* at *2 (citing *Cohen v. Uniroyal, Inc.*, 80 F.R.D. 480, 482 (E.D.Pa.1978)) (emphasis added). The court in *Angst* spoke conditionally regarding attorney-client privilege for the typewritten notes only because Mr. Shappell's *handwritten* notes would *not* have been privileged, yet Mr. Shappell had destroyed the handwritten notes when he produced the typewritten version.

If the typewritten notes in *Angst* had not been based on the non-privileged handwritten notes, they would have been privileged material because they were created with the purpose of securing counsel. This "ordinary" scenario referred to by the court in *Angst* is very much on point with the present action. Korbut has stated that he created the Notes in order to retain counsel for potential litigation. Thus, *Angst* provides further evidence that the attorney-client privilege protects the Notes from discovery.

### B. *Korbut Did not Waive His Attorney–Client Privilege*

Buffalo Wire argues that Korbut waived any attorney-client privilege that he might have had when he testified freely regarding the content of the Notes at a July 20, 1999, deposition. *See* Item 60, ¶ 5. The court disagrees with this argument. In *In re: Six Grand Jury Witnesses*, 979 F.2d 939 (2d Cir.1992), the court of appeals recognized a critical distinction between the privilege that courts grant a *communication* to one's attorney and the privilege that courts grant the facts underlying that communication. *See id.* at 943–44. Under *Six Grand Jury Witnesses,* the attorney-client privilege continues to protect from disclosure Korbut's

the attorney-client privilege protects the Notes from discovery.

*communication* of information to his attorneys (that is, the Notes), but it does *not* protect the underlying facts themselves. *See id.* Thus, Buffalo Wire was, and is, free to inquire about the facts recorded in the Notes to the extent that those facts are not privileged in and of themselves. Similarly, Korbut would have to testify to the best of his recollection regarding the non-privileged facts that were recorded in the Notes. However, Buffalo Wire may not inquire about or demand the production of the communication that Korbut made to his attorneys.

## CONCLUSION

In light of the foregoing, the court finds that the doctrine of attorney-client privilege protects from discovery the Notes to which Korbut referred during his deposition of July 20, 1999. As a result, the court grants Korbut and Hurwitz & Fine's motion to quash the subpoenas duces tecum.

So ordered.