## UNITED STATES

v.

## Nicholas DEFONTE, Defendant–Appellee,

v.

## Francia Collazos, Intervenor–Movant–Appellant.

### Docket No. 06–1046–CR.

United States Court of Appeals, Second Circuit.

Argued: March 14, 2006.

Decided: March 14, 2006.

Mark A. Racanelli, O'Melveny & Myers LLP, New York, New York (Howard E. Heiss, on the brief), for Intervenor–Movant–Appellant.

Joel K. Dranove, New York, New York, for Defendant–Appellee.

Before: JACOBS and WESLEY, Circuit Judges, and KOELTL,[1] District Judge.

PER CURIAM.

I

Francia Collazos was, at one time, an inmate at Metropolitan Correctional Center ("MCC"), a Manhattan correctional facility where defendant Nicholas DeFonte was employed as a guard. The government plans to call Collazos as a witness in the trial of DeFonte, which commenced today, on various crimes allegedly committed in the course of his employment as a corrections officer. Collazos kept a journal during her time of incarceration, recording, *inter alia,* incidents involving

---

1. The Honorable John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

DeFonte and conversations with both her attorney and government prosecutors. The Government became aware of the existence of Collazos's journal when her possessions were mistakenly taken from her cell and transferred to the Federal Correctional Institution in Danbury, Connecticut. Once the mistake was realized, the journal was delivered to the United States Attorney's Office.[2]

Shortly before commencement of the trial, DeFonte's lawyer became aware of the existence of the journal. DeFonte's lawyer requested that the journal be disclosed on the grounds that it constitutes a witness statement under 18 U.S.C. § 3500, as further defined by *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Collazos moved to intervene for a protective order, arguing that the writings in the journal are protected by attorney-client privilege.

The United States District Court for the Southern District of New York (Batts, J.) denied the motion, finding that the documents were not protected by the attorney-client privilege and that Collazos had no expectation of privacy in the contents of her cell. Because we disagree with aspects of both findings, we vacate the decision and remand for a hearing consistent with this opinion.

The matter comes to us on today's motions calendar to stay the district court's order pending an expedited appeal. On consent of the parties', we have considered the merits of the parties claims without further briefing.

## II

### A

■ The district court's decision rested in part upon the conclusion that "Colla-

zos cannot have intended her journal entries to remain confidential because the law affords her no reasonable expectation of privacy in her cell." It is true that, in the Fourth Amendment context, the law affords considerably less recognition to an inmate's subjective expectation of privacy. *See, e.g., Willis v. Artuz*, 301 F.3d 65, 68 (2d Cir.2002). An inmate does not, however, knowingly waive an attorney-client privilege with respect to documents retained in her cell simply because there is no reasonable expectation of privacy in those documents for Fourth Amendment purposes. Rather, the two inquiries are independent of each other.

■ Incarcerated or detained individuals do retain the attorney-client privilege. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir.2003) (noting that "courts have consistently afforded greater protection to legal mail than to non-legal mail"); *see also Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir.2003) (recognizing "heightened concern" with allowing prison officials to open and read mail that "has import for ... the attorney-client privilege"); *Gomez v. Vernon*, 255 F.3d 1118, 1133 (9th Cir.2001) (finding that prisoners retain right to keep privileged documents confidential where not inconsistent with legitimate penological interests). It was error, therefore, for the district court to rely on the diminished expectation of privacy in a jail cell in concluding that the attorney-client privilege could not be asserted.

The parties did not address, and the district court may consider on remand, whether (without regard to the mere fact of detention at the MCC) Collazos treated the notes in question in such a careless manner as to negate her intent to keep

---

**2.** Apparently, the journal has been kept in the possession of an Assistant United States Attor- ney who is not involved in the case, thus successfully screening the prosecutor.

them confidential. *Cf. In re Horowitz*, 482 F.2d 72 (2d Cir.1973) (holding that privilege was waived where client had willingly turned documents over to party other than attorney).

**B**

In our view, there are two types of writings contained in the journal. First, Collazos memorialized certain private conversations between Collazos and her attorney. Second, Collazos also recorded various events in her daily life, namely incidents involving DeFonte and discussions with prosecutors. Collazos claims that the second group of entries were made for the purpose of later discussions with her attorneys. The attorney-client privilege issues are different as to each group.

"Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The purpose of the rule is to is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). However, "since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose." *Fisher*, 425 U.S. at 403, 96 S.Ct. 1569.

The memorializations of private conversations Collazos had with her attorney are protected from disclosure by the attorney-client privilege. Collazos claims, and we have reason to believe, that she never consented to the journal being taken from her possession. Furthermore, there is no evidence that she shared or intended to share those entries with any third party. Thus, absent a finding upon a further hearing

that Collazos waived the privilege, her record of conversations with counsel are not subject to discovery by DeFonte.

As to the second group of entries, the law is less clear. Collazos relies on two district court cases from this Circuit in asserting privilege. In the first case, *Clark v. Buffalo Wire Works Co.*, 190 F.R.D. 93 (W.D.N.Y.1999), a client had taken notes in order to facilitate discussions of matters with his attorneys; the notes had been turned over to the attorneys; and an opposing party sought them in discovery. *Id.* at 94. The district court held that the notes were privileged because, although the attorneys did not read them contemporaneously with their creation, the notes amounted to a confidential communication between client and attorney for the purposes of legal representation. *Id.* at 95–96. Central to that decision, it appears, was the fact that the information contained in the notes was in fact communicated by the client to the attorney. *Id.*

The second case, *Bernbach v. Timex Corp.*, 174 F.R.D. 9 (D.Conn.1997), was factually very similar. The district court concluded that notes taken by a client in anticipation of her meeting with her attorney were privileged because she had actually communicated the information in those notes to her attorneys. *Id.* at 10. That is, while opposing counsel may inquire into the underlying facts, he or she "is precluded from inquiring into what [the client] communicated to her attorney about the facts underlying her allegations." *Id.* at 10 (citing *United States v. Cunningham*, 672 F.2d 1064, 1073 n. 8 (2d Cir.1982)).

Central to the finding of privilege in both decisions, it appears, is the fact that the notes were communicated by the client to the attorney. Such a requirement comports with the language of the rule—i.e.,

that there be a *communication* by the client—and makes sense from a policy perspective. A rule that recognizes a privilege for any writing made with an eye toward legal representation would be too broad. A rule that allows no privilege at all for such records would discourage clients from taking the reasonable step of preparing an outline to assist in a conversation with their attorney.

It is undisputed by the parties that the journal was never delivered to Collazos's attorney. The district court took that fact to be dispositive in determining that the journal was outside the cloak of the privilege. Collazos argues that delivery of the journal itself is not necessary as long as the journal's entries did serve as an outline for an attorney-client conversation. Certainly, an outline of what a client wishes to discuss with counsel—and which is subsequently discussed with one's counsel—would seem to fit squarely within our understanding of the scope of the privilege.

### III

In light of the district court's error in defining the scope of the privilege and of Collazos's "expectation of privacy," we believe a remand of the matter is in order. A remand will allow the district court to conduct a hearing to decide which of the writings contained in the journal fall within the scope of the privilege as discussed above. We also note that the district court did not decide that there were compelling or overwhelming Sixth Amendment concerns involved in its decision, nor did those concerns play a role in our determination. Therefore, we VACATE the order of the district court and REMAND the matter for further proceedings consistent with this opinion.