[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12035
Non-Argument Calendar
_____

D.C. Docket No. 8:14-cr-00190-SCB-EAJ-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHEN MAYER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 14, 2017)


Before WILLIAM PRYOR, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Stephen Mayer appeals his convictions and sentence after a jury convicted him of one count of conspiracy to commit wire fraud affecting a financial institution, in violation of 18 U.S.C. §§ 1343 and 1349, and eight counts of wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1342.  Mayer asserts several issues on appeal, which we address in turn.  After review, we affirm Mayer's convictions, custodial sentence, and restitution, but vacate the forfeiture order and remand for further proceedings.

## I.

Mayer first contends the district court impermissibly prevented him from obtaining alternative advice and imposed a prior restraint on his speech when it barred him from consulting with Daniel Jonas and Akiva Fischman, lawyers who were not admitted to practice in the Middle District of Florida and who did not intend to be counsel of record.  He asserts that, by endorsing his appointed counsel's attempts to prohibit Jonas and Fischman from contacting him, the court violated his right to free association.  According to Mayer, the district court further violated his rights to counsel and due process by ordering the return of discovery documents to the Government.  Finally, he faults the district court for failing to explain that he could proceed *pro se* with Jonas serving as advisory counsel.

The district court did not violate Mayer's constitutional rights.  *See United States v. Brown*, 364 F.3d 1266, 1268 (11th Cir. 2004) (reviewing questions of

2

constitutional law *de novo*).  Because Mayer was appointed counsel, he had no right to counsel of his choice or a second legal opinion, and he cannot show the district court violated his right to counsel by refusing to let Jonas or Fischman represent him when they were unwilling to be counsel of record.  *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 151 (2006) (explaining under the Sixth Amendment, defendants who do not require appointed counsel have the right to counsel of their choice, but the right does not extend to indigent criminal defendants who require appointed counsel); *Wheat v. United States*, 486 U.S. 153, 159 (1988) (stating a defendant may not insist on representation by an attorney who declines to represent him);  *United States v. Garey*, 540 F.3d 1253, 1263-64 (11th Cir. 2008) (en banc) ("In practical terms, [ ] defendants who lack the means to hire a private attorney must either accept the counsel appointed to represent them or represent themselves.").

The court also did not violate Mayer's right to self-representation, as he failed to clearly invoke his right to proceed *pro se.  See Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990) (stating to invoke the right to self-representation, the defendant must "clearly and unequivocally assert the desire to represent himself").  Although the defendant need not "recite some talismanic formula," he must "state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made."  *Stano v.*

*Dugger*, 921 F.2d 1125, 1143 (11th Cir. 1991) (*en banc*) (emphasis omitted) (quoting *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986)).

Mayer had no constitutional right to have a particular defense theory presented at trial, and, in any event, he had the opportunity to present an alternative narrative by testifying. *See Faretta v. California*, 422 U.S. 806, 820 (1975) (stating when a defendant chooses to be represented by an attorney, "law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas"). Mayer has provided no authority in support of his First Amendment arguments, nor has he shown that the alleged violations of his First Amendment rights rendered his trial unfair. As to the return of the discovery files, Mayer's reorganization of these documents was not work product, and he has not provided any authority suggesting that ordering third parties who are not counsel of record to return discovery documents is a constitutional violation. *See United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. Unit A Feb. 12, 1981) (explaining materials prepared by a client are not protected by the work product doctrine). Finally, because he does not present any specific arguments regarding his right to effective representation, he abandoned the argument. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (stating if an appellant makes only passing references to a claim or raises it in a perfunctory manner without providing support, the argument is abandoned).

II.

Next, Mayer alleges the district court plainly erred by admitting Special

Agent Ellen Wilcox's testimony.  According to Mayer, Wilcox provided

impermissible overview testimony by testifying to facts without personal

knowledge, and the Government did not present any evidence to confirm the

accuracy of those facts.  Mayer asserts Wilcox's testimony regarding what he said

or did was inadmissible under both Federal Rules of Evidence 602 and 801, and

contends the admission of her testimony was prejudicial because overview

testimony inherently presents serious dangers to a fair trial.  Moreover, he alleges,

Wilcox's testimony "squarely implicate[d]" the problem of juries placing greater

weight on evidence perceived to have the imprimatur of the government.  Finally,

Mayer argues that, if her testimony was based on interviews with third parties, the

Government violated the Confrontation Clause by presenting her testimony

without allowing him to cross-examine these witnesses.

When a party fails to contemporaneously object to the admission of

evidence, we review only for plain error.  *United States v. Turner*, 474 F.3d 1265,

1275 (11th Cir. 2007).  To demonstrate plain error, the appellant must establish

that there was "(1) error, (2) that is plain and (3) that affects substantial rights."  *Id.*

at 1276 (quotation omitted).  If those conditions are met, we "may then exercise

[our] discretion to notice a forfeited error, but only if (4) the error seriously affects

5

the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

Mayer has not demonstrated plain error as he cannot show that any alleged error in admitting Wilcox's overview testimony affected his substantial rights. *See United States v. Khan*, 794 F.3d 1288, 1300 (11th Cir. 2015) (stating overview testimony occurs when a government witness testifies as to the results of a criminal investigation, usually including aspects of the investigation in which the witness did not participate, before the government has presented supporting evidence). The majority of Wilcox's inculpatory testimony regarding the eight properties at issue in Counts 2 through 9 of the superseding indictment was corroborated by documentary evidence that had been admitted at the beginning of trial, prior to her testimony. To the extent any of Wilcox's testimony was not based on records already entered into evidence, Mayer has not shown a reasonable probability he would have been acquitted of any of the charges[1] had this testimony been

---

[1]  To convict a defendant of wire fraud, the government must show (1) the defendant intentionally participated in a scheme to defraud, and (2) use of interstate wires in furtherance of the scheme. *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). To show a scheme to defraud, the government must present evidence of material misrepresentations or the omission or concealment of material facts. *Id.* at 1270-71. "An intent to defraud may be found when the defendant believed that he could deceive the person to whom he made the material misrepresentation out of money or property of some value." *United States v. Maxwell*, 579 F.3d 1282, 1301 (11th Cir. 2009) (quotation omitted). A jury may infer such intent from the defendant's conduct. *Id.* To prove a conspiracy, the government must show that (1) two or more persons agreed to commit a crime, and (2) the defendant knowingly and voluntarily joined or participated in the conspiracy. *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005). The existence of an agreement may be proven by circumstantial evidence, including inferences from the conduct of the alleged conspirators. *Id.*

excluded, given that the Government's other evidence of guilt was overwhelming. *See United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005) (stating appellant must show there would have been a reasonable probability of a different result had the error not occurred, and if the effect of the error is uncertain or indeterminate, the appellant has not met his or her burden of showing substantial rights were affected).

### III.

Mayer further asserts his trial counsel was ineffective. We decline to consider this claim, as the record is insufficiently developed. *See United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (explaining we generally do not consider claims of ineffective assistance of counsel on direct appeal if the district court did not entertain the claim or develop a factual record). For example, although Mayer faults his trial counsel for failing to retain expert witnesses or call defense witnesses, he has not explained how any of these witnesses would have testified, nor does the record establish what the substance of the proposed witnesses' testimony would have been. Thus, there is no way of knowing whether counsel's performance was deficient or whether Mayer was prejudiced. *See United States v. Moran*, 778 F.3d 942, 965 n.11 (11th Cir. 2015) (stating to prevail on an ineffective assistance claim on direct appeal, the defendant must show both that his counsel's performance was deficient and that he was prejudiced by the

7

deficiency). We also decline to remand the case to the district court for an evidentiary hearing, as a § 2255 motion to vacate is the appropriate means by which to assert an ineffective assistance claim. *See Patterson*, 595 F.3d at 1328 (stating even if the record contains some indication of deficiencies in counsel's performance, the preferred means of reviewing an ineffective assistance claim is through a 28 U.S.C § 2255 motion to vacate sentence).

## IV.

Mayer contends the district court abused its discretion by admitting evidence he failed to file personal and corporate federal income tax returns, which he asserts is inadmissible under Federal Rule of Evidence 404(b). According to Mayer, this evidence was irrelevant to the only intent, motive, or knowledge issues in the case, which centered on whether he knew the credit partners "could not lawfully borrow money using the method they employed." Moreover, he argues, the Government did not calculate whether he was even required to file a personal tax return.

Assuming *arguendo* the district court abused its discretion in admitting evidence Mayer had not filed personal or corporate income tax returns, Mayer has not shown that this error warrants reversal, as any error was harmless. *See United States v. Hubert*, 138 F.3d 912, 914 (11th Cir. 1998) (explaining if we conclude a district court abused its discretion in admitting evidence in violation of Rule 404(b), we then determine whether the error was harmless). As discussed above,

the Government presented ample evidence of guilt.  This evidence was sufficient for a reasonable jury to find Mayer guilty beyond a reasonable doubt even if the district court had excluded evidence he failed to file personal and corporate federal income tax returns.  *See id.* (stating when the other evidence against the defendant is sufficiently substantial for a reasonable jury to find the defendant guilty beyond a reasonable doubt, any error in admitting evidence in violation of Rule 404(b) is harmless).

## V.

Mayer next asserts the cumulative effect of the alleged errors previously described deprived him of his right to a fair trial.  Assuming *arguendo* the district court admitted some evidence in error, in light of the overwhelming untainted evidence against Mayer, any potential error was harmless.  *United States v. Hesser*, 800 F.3d 1310, 1329-30 (11th Cir. 2015).

## VI.

In his final claim, Mayer raises several issues regarding his sentence.  We address each alleged error in turn.

## A.

First, Mayer challenges the loss amount enhancement, contending the calculated loss amounts with respect to four properties "were based upon no evidence at all."  As to two of the properties, Mayer states there is no evidence the

mortgages were still outstanding at the time of the tax sales. As to the other two properties, Mayer alleges the mortgages "are still in place," and thus the lenders have not suffered any losses.

Under the Guidelines, a defendant may receive an eighteen-level enhancement if the actual or intended loss of the offense conduct was greater than $2,500,000 but did not exceed $7,000,000. U.S.S.G. § 2B1.1(b)(1)(J) (Nov. 2014)[2]; *id.* § 2B1.1 comment. (n.3(A)). The government must prove the attributable loss by a preponderance of the evidence, and this burden must be established by reliable and specific evidence. *United States v. Dabbs*, 134 F.3d 1071, 1081 (11th Cir. 1998). The Guidelines do not require a precise determination of the loss, however. *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015). Rather, the district court need only make a reasonable estimate of the loss based on the available information. *Id.*

The district court did not plainly err in calculating the loss amount. *See United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003) (stating if a defendant failed to clearly state the grounds for an objection in the district court we review only for plain error). As to the properties located at 2914 North 17th Street and 913 East 28th Avenue, Wilcox's explanation at trial—that the mortgages remained outstanding when the County issued a tax deed on the properties, resulting in "total

---

[2] All citations are to the November 2014 version of the Guidelines, under which Mayer was sentenced.

loss[es]" to the lenders—refutes Mayer's contention that there is no evidence the mortgages with respect to these properties remained in place at the time of the tax sales. Wilcox's trial testimony also belies his assertion the lenders have not realized any losses as to the other two properties (915 East 23rd Avenue and 3510 North 11th Street) because the mortgages remain outstanding. To the extent Mayer intends to challenge the loss calculations for the remaining eight properties, he abandoned the argument because he did not develop it or point to any specific examples in which there was insufficient reliable evidence upon which the district court could base its loss calculations. *See Sapuppo*, 739 F.3d at 681.

B.

Second, Mayer challenges the four-level enhancement he received for being a leader or organizer of the scheme. Noting only three co-conspirators admitted to knowingly participating in the scheme, he asserts the sole evidence supporting a finding that others knowingly participated in criminal activity was "Wilcox's hearsay testimony."

The commentary to U.S.S.G. § 3B1.1 defines a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). To apply the § 3B1.1 enhancement, the district court must determine, by a preponderance of the evidence, that the individual or individuals were criminally responsible. *United*

11

*States v. Williams*, 527 F.3d 1235, 1248-49 (11th Cir. 2008).  Those whose role

was *de minimis* will not be counted.  *Id.* at 1249.  The defendant himself is

considered one of the five participants.  *United States v. Holland*, 22 F.3d 1040,

1045 (11th Cir. 1994).

The district court did not err in applying a four-level role enhancement.  *See*

*Williams*, 527 F.3d at 1249 (11th Cir. 2008) (reviewing the district court's

application of § 3B1.1 to determine a person is a "participant" *de novo* and the

underlying factual findings for clear error).  The evidence at trial demonstrated that

Naomi D'Esop acted as a straw buyer and obtained mortgages to buy several

properties, which she could not afford to pay off.  She testified that, in buying

properties and obtaining the requisite mortgages, she signed numerous documents

containing false statements.  Her testimony was sufficient to establish by a

preponderance of the evidence that she was a knowing participant in Mayer's

scheme.  *See Williams*, 527 F.3d at 1248-49.  Mayer concedes that three others

knowingly participated in the scheme, and he himself is considered a participant.

*See Holland*, 22 F.3d at 1045.  Thus, the district court did not err in determining

there were at least five participants.

## C.

Third, Mayer contends "[t]he restitution figures contained in [the PSI] are

not explained anywhere in the record."  He asserts the district court could only

12

order restitution as to the amount of losses caused by his commission of the charged offenses. He contends some of the lenders were not financial institutions, and the statute of limitations expired as to some of his conduct prior to the filing of the indictment. He further asserts Wilcox's testimony as to the amount of the losses on some properties was uncorroborated.

Under the Mandatory Victims' Restitution Act (MVRA), 18 U.S.C. §§ 3663A-3664, restitution for "wire fraud is not 'limited to the specific act of fraud underlying the mailing or use of the wires for which the defendant is convicted,' but is available for any victim of 'the entire scheme or artifice to defraud furthered by the mailing or use of the wires.'" *United States v. Foley*, 508 F.3d 627, 635 (11th Cir. 2007). "[A] criminal defendant cannot be compelled to pay restitution for conduct committed outside of the scheme, conspiracy, or pattern of criminal behavior underlying the offense of conviction." *United States v. Brown*, 665 F.3d at 1239, 1253 (11th Cir. 2011) (quotations omitted). Restitution is appropriate, however, for victims of "conduct closely related to the offense of conviction . . . in addition to the specific conduct for which the defendant was convicted." *Id.* at 1252. In considering whether conduct was closely related, we consider whether the victim and purpose of each scheme were the same, whether the schemes involved the same *modus operandi*, and whether the schemes involved common participants. *United States v. Edwards*, 728 F.3d 1286, 1293 (11th Cir.

13

2013).  Restitution is available even if the losses were caused by conduct that occurred outside the statute of limitations, so long as the conduct was in the course of the scheme.  *Brown*, 665 F.3d at 1253.

"To be considered a 'victim' under the MVRA, an entity must have been 'directly and proximately harmed as a result of the commission of [the] offense.'" *See United States v. Martin*, 803 F.3d 581, 593 (11th Cir. 2015).  Successor lenders may be "victims" under the MVRA.  *Id.* at 593-94.

The district court did not plainly err in ordering restitution to Wilmington Savings Fund Society (Wilmington), Bank of America, DLJ Mortgage Capital, Inc., US Bank National Association, Deutsche Bank National Trust, and JP Morgan Chase (JP Morgan).  *See United States v. Hasson*, 333 F.3d 1264, 1276 (11th Cir. 2003) (stating if the defendant fails to object to the restitution order, we review the order for plain error).  As to the properties located at 915 East 23rd Avenue and 3510 North 11th Street, Wilcox explained these mortgages were a loss to the lenders because no one was paying them.  The record demonstrates Wilcox's testimony regarding the sales of the properties located at 5005 Troydale Road, 2306 North Nebraska Avenue, and 3514 North 9th Street was based on her review of warranty deeds and bank records, and the Government introduced evidence corroborating her testimony about the sales of the properties at 2911 North 18th Street and 918 East 14th Avenue.  *See Martin*, 803 F.3d at 593 (providing the

14

government has the burden of proving by a preponderance of the evidence that a particular entity was a victim of the defendant's offense).  As to Mayer's challenges to the restitution orders in favor of Bank of America, Wilmington, and JP Morgan, the district court was entitled to rely on the undisputed factual statements in the presentence investigation report, which listed these entities as victims of Mayer's fraud.  *See Hasson*, 333 F.3d at 1276 (stating a district court may generally rely on undisputed factual statements in a PSI when ordering restitution).  Finally, any error in awarding restitution based on uncharged conduct from a closely related scheme that occurred outside of the statute of limitations was not clear or obvious, given our precedent allowing for restitution for conduct closely related to the charged conduct and for conduct occurring outside of the statute of limitations.  *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (explaining when the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error if there is not binding precedent directly resolving it).

## D.

Finally, Mayer alleges the district court erred by ordering him to forfeit the proceeds from loans that did not affect a financial institution.  If the defendant did not object to the entry of the forfeiture order, we review the order for plain error. *United States v. Esquenazi*, 752 F.3d 912, 939 n.22 (11th Cir. 2014).  Federal law

15

requires that, in sentencing defendants "convicted of a violation of, or conspiracy to violate . . . [18 U.S.C. § 1343], affecting a financial institution," courts "shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation."  18 U.S.C. § 982(a)(2).

The district court plainly erred in ordering Mayer to forfeit the proceeds of wire fraud not affecting a financial institution, pursuant to § 982(a)(2).  *See* *Esquenazi*, 752 F.3d at 939 n.22.  The district court's forfeiture order was erroneous, as at least some of the mortgage proceeds were not dependent on Mayer defrauding a financial institution.  For example, none of the loans that were taken out on 5005 Troydale Road were obtained from financial institutions, yet Mayer was ordered to forfeit nearly $1 million as a result of the final mortgages taken out on this property.

The error was also plain, given that § 982(a)(2) provides that the court must order a defendant convicted of violating or conspiring to violate the federal wire fraud statute "affecting a financial institution" to forfeit "proceeds the person obtained directly or indirectly, *as the result of such violation*," and at least some of the proceeds from mortgage loans were not obtained directly or indirectly as a result of the offenses for which Mayer was convicted.  *See* 18 U.S.C. § 982(a)(2) (emphasis added); *Lejarde-Rada*, 319 F.3d at 1291.  At least some of the proceeds

16

from mortgage loans, such as the loans taken out on 500 Troydale, were not obtained directly or indirectly as a result of the offenses for which Mayer was convicted; rather, they were obtained as a result of his related scheme to commit wire fraud not affecting a financial institution.

The error also affected Mayer's substantial rights. *See Turner*, 474 F.3d at 1276. The total value of the final mortgages taken out on the 12 properties, $4,404,200, was the figure the Government used to calculate the forfeiture amount. Only $1,114,200 of these mortgages came from GreenPoint, an FDIC-insured entity. Straw buyers obtained the remaining $3,290,000 in mortgages from First NLC, Silver State, American Brokers Conduit, Hometown, and Ownit. The Government did not submit any evidence showing the entities are FDIC-insured, and none of the charges stemmed from these mortgages. Because the inclusion of mortgages from non-FDIC insured entities nearly quadrupled the forfeiture amount, the inclusion was prejudicial. Finally, given the fact the error is both plain and prejudicial, the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Turner*, 474 F.3d at 1276.

## VI.

The district court did not err in ordering Mayer not to contact Jonas or Fischman or in ordering the return of discovery documents to the Government. The district court did not plainly err in admitting Wilcox's testimony, calculating

the loss amount, or ordering restitution.  We decline to review on direct appeal Mayer's claim of ineffective assistance.  Assuming *arguendo* the district court erred in admitting evidence Mayer failed to file personal and corporate federal income tax returns, he has not demonstrated he was prejudiced by the error. Further, he cannot show cumulative error.  The district court also properly applied the four-level role enhancement.  Finally, because the district court plainly erred in ordering Mayer to forfeit the proceeds of loans that were not obtained directly or indirectly as a result of his conspiracy to commit wire fraud affecting a financial institution or as the result of his commission of wire fraud affecting a financial institution, we vacate the forfeiture order and remand for further proceedings.

**AFFIRMED IN PART, VACATED AND REMENDED IN PART.**