**UNITED STATES of America**

**v.**

**David Jesus JIMENEZ, Defendant.**

**Criminal Action No. 16–00153–CG–N**

United States District Court,
S.D. Alabama, Southern Division.

Signed 07/14/2017

Donna Barrow Dobbins, Christopher John Bodnar, U.S. Attorney's Office, Mobile, AL, for Plaintiff.

Donald M. Briskman, Briskman & Binion, P.C., Mobile, AL, for Defendant.

## ORDER

KATHERINE P. NELSON, UNITED STATES MAGISTRATE JUDGE

This action is before the Court on the motion for *in camera* review of eleven emails (Doc. 89) filed by the Government.[1] Defendant David Jesus Jimenez has timely filed a response (Doc. 92) to the motion, and the Government has timely filed a reply (Doc. 97) to the response. The Government's motion requests that the Court conduct a review *in camera* of eleven emails, part of approximately 14,000 emails from two of Jimenez's email accounts obtained by the Government from GoDaddy.com pursuant to a search warrant, to determine if they are subject to either attorney-client privilege or the work-product doctrine. Jimenez has responded that both attorney-client privilege and the work-product doctrine apply to shield those eleven emails from Government review. Embedded within his response, Jimenez also moves the Court to require the Government to turn over all emails the Government has identified as potentially privileged, to destroy the Government's copies of those emails, and to not rely on any information obtained from those emails.

## I. BACKGROUND

Per the Government's motion, it provided a hard-drive of the approximately 14,000 seized emails to Jimenez in late January 2017. (Doc. 89 at 1). Shortly thereafter, and before the prosecution team began reviewing the emails, counsel for Jimenez notified the Government that they believed there were potentially privileged communications between Jimenez and both his former and present defense counsel within the emails. (*Id.*). Based on this representation, the Government set up a filter team in which an Assistant United States Attorney ("AUSA") not connected with this case would review the emails and mark any that could be considered potentially privileged. (*Id.*). The filter AUSA identified 62 potentially privileged emails, which were written onto a compact disc and delivered to the undersigned on June 8, 2017. (*See id.*; Doc. 82).[2]

At a status conference held on June 7, 2017, defense counsel identified additional emails that he considered privileged—namely, emails w by Jimenez and sent to himself that he intended to be notes of

---

1. The Court has referred the motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (6/23/2017 electronic reference).

2. The undersigned confirms receipt of the CD containing the 62 emails.

topics he wanted to later discuss with his attorneys. (Doc. 89 at 2). Defense counsel asserted at the status conference that those emails were protected by both attorney-client privilege and the work-product doctrine. (*Id.*). Following the status conference, the Government had an IT specialist search the GoDaddy.com emails for emails sent by Jimenez to only himself, which resulted in twelve such emails being identified. (*Id.*). A second filter AUSA reviewed these twelve emails and determined that one of them "was clearly an attorney client communication." (*Id.*). The second filter AUSA determined that the other eleven emails (hereinafter, "the Disputed Emails") are "not necessarily privileged communications," and a Government IT staffer determined that none of the Disputed Emails had later been forwarded by Jimenez to any of his attorneys. (*Id.*).

The Government has delivered to the undersigned a second CD containing the Disputed Emails.[3] The Government requests that the Court review *in camera* the Disputed Emails and declare that they are not protected by either attorney-client privilege or the work-product doctrine.

## II. ANALYSIS

### a. Attorney–Client Privilege

 "The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice. The protection afforded by the attorney-client privilege promotes full and frank communications between an attorney and client in order to facilitate the maximum effectiveness of the attorney's representation...Yet the privilege is not all-inclusive and is, as a matter of law, construed narrowly so as not to exceed the means neces-

sary to support the policy which it promotes...The privilege is not designed to protect revelation of incriminating matters, only confidential communications between the attorney and client regarding the matter of representation." *In re Grand Jury Matter No. 91-01886*, 969 F.2d 995, 997 (11th Cir. 1992) (citations and quotation omitted). "[A] claim of attorney-client privilege requires proof of the following elements: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is the member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990) (quotation omitted). *See also Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003) (" 'The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential.' *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was '(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential.' *United*

---

**3.** The Government has also included the twelfth email that the second filter AUSA determined "was clearly an attorney client communication." Because the Government appears to concede to this assessment, the undersigned makes no independent determination of the issue as to this twelfth email.

*States v. Bell,* 776 F.2d 965, 971 (11th Cir. 1985).").

■ Jimenez does not contend that any of the Disputed Emails were ever forwarded or otherwise provided to any of his attorneys. Rather, he contends that the Disputed Emails contained notes made to himself, after reviewing the indictment in this case at his counsel's direction, "for the purpose of conveying those thoughts to [counsel] to be incorporated into Jimenez's defense strategy." (Doc. 92 at 2). In support, Jimenez has submitted a 28 U.S.C. § 1746 unsworn declaration of attorney Adam Schwartz (Doc. 92-1), who avers that he represented Jimenez "in connection with the Government's investigation and prosecution of the instant and related matters" from "June 2016 until approximately January 26, 2017. . ." (*Id.* at 1). "[I]n August 2016, [Schwartz] asked Mr. Jimenez to analyze the Indictment and to take notes on it to facilitate [their] discussions on defense strategy in the Government's case against him." (*Id.* at 1–2). Jimenez and Schwartz "held numerous defense strategy discussions regarding the Government's case against him[,]" and Schwartz, having reviewed the Disputed Emails, attests that his "defense strategy and discussions with Mr. Jimenez involving the same were driven by the contents of" the Disputed Emails. (*Id.* at 2).

Having reviewed *in camera* the Disputed Emails, the undersigned agrees that they can be fairly characterized as notes Jimenez wrote to himself about the indictment. The Government argues that "[t]o extend the attorney-client privilege to an un-communicated note, as Jimenez's counsel suggests, would be unprecedented[,]" asserting that "[n]o court has made such a leap." (Doc. 89 at 4). As Jimenez points out, however, the Second Circuit Court of Appeals has made such a leap.

In *United States v. DeFonte*, the defendant, DeFonte, a former corrections officer charged with crimes committed during the course of that employment, sought to discover a journal kept by a potential government witness, Collazos, who had been incarcerated at the facility where DeFonte had worked as a guard. 441 F.3d 92, 93–94 (2d Cir. 2006) (per curiam). Collazos sought a protective order preventing disclosure of the journal on the grounds of attorney-client privilege, which the district court denied. *Id.* at 94. On appeal, the Second Circuit vacated the district court's denial and remanded for further proceedings. *Id.* at 96.

The Second Circuit divided the journal writings into two categories: those in which "Collazos memorialized certain private conversations between Collazos and her attorney[,]" and those in which Collazos "recorded various events in her daily life, namely incidents involving DeFonte and discussions with prosecutors." *Id.* at 95. Similar to Jimenez's claims regarding the eleven emails, "Collazos claim[ed] that the second group of [journal]entries were made for the purpose of later discussions with her attorneys." *Id.* As to the first category of entries, the Second Circuit readily concluded that "[t]he memorializations of private conversations Collazos had with her attorney are protected from disclosure by the attorney-client privilege. *Id.* As to the second category, the Second Circuit found the law "less clear." *Id.* However, after analyzing two district court cases cited by Collazos, the Second Circuit found that the second category of entries could also be protected by attorney-client privilege. *See id.* at 95–96. As to this point, the Second Circuit reasoned as follows:

> In the first case, *Clark v. Buffalo Wire Works Co.,* 190 F.R.D. 93 (W.D.N.Y. 1999), a client had taken notes in order to facilitate discussions of matters with his attorneys; the notes had been turned over to the attorneys; and an opposing party sought them in discovery. *Id.* at 94. The district court held

that the notes were privileged because, although the attorneys did not read them contemporaneously with their creation, the notes amounted to a confidential communication between client and attorney for the purposes of legal representation. *Id.* at 95–96. Central to that decision, it appears, was the fact that the information contained in the notes was in fact communicated by the client to the attorney. *Id.*

The second case, *Bernbach v. Timex Corp.*, 174 F.R.D. 9 (D. Conn. 1997), was factually very similar. The district court concluded that notes taken by a client in anticipation of her meeting with her attorney were privileged because she had actually communicated the information in those notes to her attorneys. *Id.* at 10. That is, while opposing counsel may inquire into the underlying facts, he or she "is precluded from inquiring into what [the client] communicated to her attorney about the facts underlying her allegations." *Id.* at 10 (citing *United States v. Cunningham*, 672 F.2d 1064, 1073 n.8 (2d Cir. 1982)).

Central to the finding of privilege in both decisions, it appears, is the fact that the notes were communicated by the client to the attorney. Such a requirement comports with the language of the rule-i.e., that there be a *communication* by the client-and makes sense from a policy perspective. A rule that recognizes a privilege for any writing made with an eye toward legal representation would be too broad. A rule that allows no privilege at all for such records would discourage clients from taking the reasonable step of preparing an outline to assist in a conversation with their attorney.

It is undisputed by the parties that the journal was never delivered to Collazos's attorney. The district court took that fact to be dispositive in determining that the journal was outside the cloak of the privilege. Collazos argues that delivery of the journal itself is not necessary as long as the journal's entries did serve as an outline for an attorney-client conversation. Certainly, an outline of what a client wishes to discuss with counsel-and which is subsequently discussed with one's counsel-would seem to fit squarely within our understanding of the scope of the privilege.

*Id. See also Graves v. Deutsche Bank Sec., Inc.*, No. 07 CIV. 05471 BSJ KNF, 2011 WL 721558, at *2 (S.D.N.Y. Feb. 10, 2011) ("While physical delivery of the plaintiff's handwritten notes to his counsel is not a requirement for the attorney-client privilege to attach, 'as long as the [notes] did serve as an outline for an attorney-client conversation,' the notes would be privileged." (quoting *DeFonte*, 441 F.3d at 96)), *aff'd*, 2011 WL 6057554 (S.D.N.Y. Dec. 5, 2011).

Here, Jimenez's former counsel Schwartz has averred that he instructed Jimenez to make the notes contained in the Dispute Emails and that his "discussions with Mr. Jimenez involving [defense strategy] were driven by the contents of the" those emails. (Doc. 92–1 at 2). Thus, Jimenez has presented evidence that the contents of the Disputed Emails, while not delivered to Schwartz or any other counsel, did serve as an outline for attorney-client conversations regarding the present case. *Cf. Graves*, 2011 WL 721558, at *2 ("The plaintiff testified at his deposition: 'I was preparing to attempt to get retained by counsel, and I prepared the notes in anticipation of—of—of that.' He also stated he created the notes '[t]o prepare for a meeting with Mr. Seiler and Ed Friedman, his partner. The name of the firm was Friedman Kaplan & Seiler.' However, the plaintiff did not recall whether he gave his handwritten notes to counsel. Nothing in the record indicates that the content of the plaintiff's handwritten notes served as a basis for any conversation that the plaintiff

might have had with counsel he was attempting to engage or that he actually engaged, or that the content of his notes was orally communicated or discussed with his counsel. Absent any evidence that a communication by the plaintiff to his counsel occurred, based on the plaintiff's handwritten notes, the burden of establishing the first element of the attorney-client privilege has not been met. Accordingly, the Court finds that the plaintiff's handwritten notes are not protected by the attorney-client privilege and must be surrendered to the defendant.").[4]

Finding the above reasoning of *DeFonte* persuasive and applying it here, the undersigned finds that the Disputed Emails are protected by attorney-client privilege.

### b. Work–Product Doctrine

"The work-product doctrine, recognized by th[e Supreme] Court of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947),...recognized a qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *United States v. Nobles*, 422 U.S. 225, 236–38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (quoting *Hickman*, 329 U.S. at 508, 67 S.Ct. 385). "[T]his doctrine applies to criminal litigation as well as civil..." *Id.* at 236, 95 S.Ct. 2160. "[T]he work-product doctrine is distinct from and broader than the attorney-client privilege." *Id.* at 238, 95 S.Ct. 2160 n.11.

■ As the Government correctly points out, the law of this Circuit is that materials prepared by a client are not protected by the work product doctrine. *See United States v. Davis*, 636 F.2d 1028, 1039–40 (5th Cir. Unit A 1981) (Wisdom, J.) ("[I]t is plain here that none of the summoned documents were 'materials prepared by an attorney "acting for his client in anticipation of litigation"'. *United States v. Nobles*, 422 U.S. 225, 237–38, 95 S.Ct. 2160, 2169, 45 L.Ed. 2d 141, quoting *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451. A large proportion of the summoned documents are business records prepared by the client, rather than by or on behalf of his lawyers. Of the documents prepared by the attorneys themselves," the doctrine also did not apply.);[5] *United States v. Mayer*, 679 Fed. Appx. 895, 898–900 (11th Cir. 2017) (per curiam) (unpublished) (citing *Davis* as "explaining materials prepared by a client are not protected by the work product doctrine"). Jimenez's arguments to the contrary are unavailing.[6] Accordingly, the undersigned finds that the Disputed Emails

---

**4.** The Government has not argued that attorney-client privilege was lost by Jimenez's use of a third-party, GoDaddy.com, to email himself these notes. Indeed, the Government concedes that one email received from GoDaddy.com is privileged. Moreover, "the fact that information in an attorney-client communication might be discoverable by other means"–here, by obtaining a search warrant for the GoDaddy.com email accounts–"does not mean that the communication is not privileged, provided that the communication was intended to be confidential." *In re Fed. Grand Jury Proceedings, 89–10 (MIA)*, 938 F.2d 1578, 1582 (11th Cir. 1991).

**5.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**6.** Both parties have cited Federal Rule of Civil Procedure 26(b)(3) in support of their respective positions on the work-product doctrine. While Civil "Rule 26(b)(3)(A) incorporates the attorney work-product doctrine discussed in...*Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)[,]" *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013), the work-product doctrine exists independent of Civil Rule 26(b)(3)(A), and neither party has shown why this Rule of Civil Procedure should apply in this criminal case. See Fed. R. Civ. P. 1 ("These rules govern the procedure of all civil actions and proceedings in the United States district courts, except as stated in Rule 81.").

are not shielded by the work-product doctrine.

### c. Return of Privileged Information

In his response, Jimenez asserts that the Government should be ordered under Federal Rule of Civil Procedure 26(b)(5)(B) to turn over to Jimenez all 62 potentially privileged emails identified by the first screening AUSA, to destroy all Government copies, and to not to use any of the information obtained from the emails. Again, however, Jimenez cites no authority for applying this Rule of Civil Procedure to a criminal case. *See* Fed. R. Civ. P. 1.[7] Accordingly, Jimenez's motion to compel compliance with Federal Rule of Civil Procedure 26(b)(5)(B) embedded within his response (Doc. 92 at 5–6) is due to be **DENIED**.

### III. CONCLUSION

In accordance with the foregoing analysis, the Government's motion for *in camera* review (Doc. 89) is **GRANTED**. Having conducted an *in camera* review of the Disputed Emails and considered the arguments of the parties, the undersigned finds that the Disputed Emails are privileged as attorney-client communications but are **not** protected by the work-product doctrine. Further, Jimenez's motion to compel compliance with Federal Rule of Civil Procedure 26(b)(5)(B) embedded within his response (Doc. 92 at 5–6) is **DENIED**.

**DONE** and **ORDERED** this the 14th day of July 2017.

---

Federal Rule of Criminal Procedure 16(b)(2), which incorporates work-product doctrine protections, is also inapplicable here because it only applies to a criminal defendant's disclosures under Criminal Rule 16(b)(1). Here, the alleged work-product was obtained from a third party pursuant to a search warrant.

7. Neither of the district court cases Jimenez cites supports this proposition. *United States v. $45,357.00 in U.S. Currency*, No. CV1509989DMGAJWX, 2016 WL 6998570 (C.D. Cal. Nov. 29, 2016), is a civil forfeiture case. While *United States v. Sigman*, No. 11-80155-CR, 2013 WL 5890714 (S.D. Fla. Nov. 4, 2013), is a criminal case, that case was actually applying Federal Rule of Evidence 502(b), which incorporates the procedures of Federal Rule of Civil Procedure 26(b)(5)(B) "if applicable." Fed. R. Evid. 502(b)(3). *Sigman* contains no substantive discussion of Rule 26(b)(5)(B), and the only mention of that Rule is in the district court's verbatim quotation of Rule of Evidence 502(b).

Jimenez also claims the procedures set out in § 9–13.420 of the Department of Justice's United States Attorneys' Manual (https://www.justice.gov/usam/united-states-attorneys-manual (last visited July 6, 2017)) require the Government to return the privileged emails. First, Jimenez has cited no authority indicating the Government can be compelled to follow its own advisory manual. *See* U.S. Dep't of Justice, United States Attorneys' Manual 1–1.000 ("The Manual provides only internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal."), 9–13.420 ("These guidelines are set forth solely for the purpose of internal Department of Justice guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal, nor do they place any limitations on otherwise lawful investigative or litigative prerogatives of the Department of Justice."). Second, § 9–13.420 of the Manual is inapplicable to the present issue, as it only applies to searches of the "premises of an attorney who is a subject of an investigation..."